(text box: 1)
 NO. 5-00-0121

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

CARRIE S. MANUEL, )  Appeal from the

)  Circuit Court of

     Plaintiff-Appellant, )  Lawrence County.

)

v. )  No. 96-L-17

)

RED HILL COMMUNITY UNIT )

SCHOOL DISTRICT #10 BOARD OF )

EDUCATION, )  Honorable

)  Robert M. Hopkins,

     Defendant-Appellee. )  Judge, presiding.  

________________________________________________________________________

JUSTICE GOLDENHERSH delivered the opinion of the court:

Carrie S. Manuel (plaintiff) filed a four-count complaint in the circuit court of Lawrence County.  Red Hill Community Unit School District #10 was named as a defendant in counts I and III.  Red Hill Community Unit School District #10 Board of Education (defendant) was named in counts II and IV.  Defendant moved to dismiss.  Counts I and III were dismissed for the failure to name a proper party.  See 105 ILCS 5/10-2 (West 1998).  The court denied the motion in regard to counts II and IV.  Defendant filed a motion to reconsider.  On reconsideration, the court entered an order granting defendant's motion and dismissed counts II and IV.  Plaintiff appeals the order dismissing counts II and IV.  The appeal raises several issues.  We reverse and remand.

I. FACTS

In her complaint, plaintiff alleged that on the evening of January 5, 1996, she was asked by Hank Ginder, a teacher employed by defendant, to serve soft drinks and work in a concession stand during a basketball game at Red Hill High School.  Plaintiff, a student of the district at the time, was at least 18 years of age, suffered from cerebral palsy, and walked with a limp.  Plaintiff alleged that while she was working at the concession stand, Ginder asked her to see if other employees of defendant who were working at the basketball game, such as coaches, wanted soft drinks. 

Plaintiff alleged that a heavy, wet snow had fallen and that the stairs and tile flooring of Red Hill High School were "soppy wet."  Plaintiff alleged that in order to complete the task given by Ginder she had to "walk up a set of stairs, over a landing, and then down another set of stairs to the auditorium."  On the return trip, plaintiff slipped and fell down the stairs, causing personal injury.  Plaintiff made the same allegations in counts II and IV, alleging that the conduct was negligent in count II and willful and wanton in count IV. 

Defendant filed a combined motion to dismiss asking for a dismissal under section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 1998)) or, in the alternative, under section 2-615 of the Code (735 ILCS 5/2-615 (West 1998)).  Defendant made several arguments in the motion, including claiming that it was immune from negligence claims under several sections of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/1-101 
et seq.
 (West 1998)).  Plaintiff filed a reply arguing that plaintiff's claim should be excepted from the Act by the "special duty doctrine" and that she pled willful and wanton conduct.  Both parties filed subsequent pleadings on the motion.

After hearing arguments, the court entered an order denying the motion in regard to counts II and IV.  In its order, the court pointed out that plaintiff had alleged that she was hired by defendant to work at a concession stand, that she was physically handicapped, and that she was ordered to use wet stairs.  The court found that plaintiff had stated a cause of action in light of the Act.  

Defendant filed a motion to reconsider.  Due to the retirement of the judge who issued the original order, the motion to reconsider was heard by a different judge.  The court granted the motion to reconsider and, in a written opinion, dismissed counts II and IV of plaintiff's complaint.

With regard to count II, the court ruled that the special-duty doctrine did not apply, and the court held that defendant was afforded immunity from claims of negligence pursuant to section 3-106 of the Act (745 ILCS 10/3-106 (West 1998)).  With respect to count IV, the court ruled that plaintiff did not sufficiently allege facts which would support a finding of willful and wanton conduct, and the court dismissed count IV pursuant to section 2-615 of the Code.  

II. ANALYSIS

Although plaintiff's appeal focuses on the issue of whether the Act applies to actions by employees, the resolution of this matter involves several other issues.  The viability of plaintiff's complaint depends on whether section 3-106 of the Act applies, whether plaintiff pled willful and wanton conduct, and whether the natural accumulation rule applies.

A. Section 3-106

Defendant contends that it is immune from negligence pursuant to section 3-106 of the Act.  Section 3-106 reads:

"Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings[,] or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury."  745 ILCS 10/3-106 (West 1998).  

Plaintiff contends that the site of the alleged incident was not property intended to be used for recreational purposes and that, therefore, the Act does not apply.  In 
Capps v. Belleville School District No. 201
, 313 Ill. App. 3d 710, 714, 730 N.E.2d 81, 85 (2000), this court stated that the plain language of section 3-106 contemplates immunity for bounded public property used for recreational purposes.  In 
Capps
, we found that a ramp leading to a gymnasium was outside the recreational public property addressed by the Act.  
Capps
, 313 Ill. App. 3d at 714, 730 N.E.2d at 85.  In this case, the question of whether the location of plaintiff's alleged fall was within the bounded public property protected by the Act was never addressed at the trial court level, and the record is unclear regarding the issue.  This is understandable, as our opinion in 
Capps
 was published after the trial court's order and after plaintiff filed her notice of appeal.  We decline to further address whether the property is covered, as we find that plaintiff has alleged conduct on the part of defendant that would not be provided immunity by the Act.  Given the development of law on this issue, and the fact that we remand this cause on other grounds, the trial court should reconsider this issue. 

In her brief, plaintiff focuses on whether the Act applies to injuries to employees.  Upon a review of plaintiff's appeal, we decline to address whether the Act is inapplicable in all suits by employees, because we find that under at least one set of allegations in plaintiff's complaint, defendant's potential liability is not based on the condition of the premises.  Defendant's alleged liability is, therefore, outside the immunity provided by section 3-106.

Whether defendant is provided immunity by section 3-106 is a question of statutory construction, and as such, the standard of review is 
de novo
.  
In re Tax Deed
, 311 Ill. App. 3d 440, 443, 723 N.E.2d 1186, 1189 (2000).  The goal of statutory construction is to ascertain and give effect to the intent of the legislature.  
Zekman v. Direct American Marketers, Inc.
, 182 Ill. 2d 359, 368, 695 N.E.2d 853, 858 (1998).  When faced with a question of statutory construction, the courts should first look to the language of the statute to determine the intent of the drafters.  
Davis v. Toshiba Machine Co., America
, 186 Ill. 2d 181, 184, 710 N.E.2d 399, 401 (1999).  The plain and ordinary language of the statute is the best indication of the legislative intent.  
King v. Industrial Comm'n
, 189 Ill. 2d 167, 171, 724 N.E.2d 896, 898 (2000).  Additionally, the interpretation given to the statute should correspond with  the reason for the law, the evil to be remedied, and the object to be obtained by the statute.  
Stern v. Norwest Mortgage, Inc.
, 179 Ill. 2d 160, 164, 688 N.E.2d 99, 102 (1997).

The Act is an attempt to create uniform rules of immunity as exceptions to the general rule of liability.  
Aikens v. Morris
, 145 Ill. 2d 273, 278, 583 N.E.2d 487, 490 (1991). Because the Act is in derogation of common law, it should be strictly construed to limit immunity.  
Aikens v. Morris
, 145 Ill. 2d 273, 278, 583 N.E.2d 487, 490 (1991); 
Snyder v. Curran Township
, 167 Ill. 2d 466, 477, 657 N.E.2d 988, 994 (1995).  

The plain and ordinary meaning of the statute is that the theory of recovery must derive from the public entity's control of the property.  The immunity is directed at the location of the incident.  Defendant is correct in asserting that plaintiff's being an employee would not change the nature of property so that it would no longer be " 'property intended or permitted to be used for recreational purposes.' "  
Hanover Insurance Co. v. Board of Education
, 240 Ill. App. 3d 173, 176, 608 N.E.2d 183, 185 (1992) (quoting Ill. Rev. Stat. 1989, ch. 85, par. 3-106).  Illinois courts have held that the status of property for purposes of 3-106 is determined by the nature of the property and its past use.  
Bubb v. Springfield School District 186
, 167 Ill. 2d 372, 379, 657 N.E.2d 887, 891 (1995).  The essential question is whether "liability is based on" (745 ILCS 10/3-106 (West 1998)) the condition of property if a plaintiff claims that a defendant's negligent use of order and control over her led to injuries, even though the injury would not have occurred but for the condition of the property.

Section 3-106 provides immunity only when "liability is based on" the condition of the property.  745 ILCS 10/3-106 (West 1998).  The plain and ordinary meaning of the phrase "liability is based on" is that the entity's duty must be derived from its control of the property, 
e.g.
, maintenance or construction of the property.  The statute could have been written in a manner such that immunity would attach when the condition was the "but-for" causation of the injury (
e.g.
, "injury caused by") or could have provided a broader immunity by applying to any action "related to" the condition of property.  Section 3-106 specifies that the "liability" must be "based on" the existence of a condition.  The plain meaning of this phrase is that immunity is only granted if the theory of recovery which creates defendant's obligation is one of premises liability.  Accepting the plain meaning of the language, the theory of liability upon which plaintiff bases her case determines whether section 3-106 applies regardless of whether the condition of the property caused her injury.  Prior court decisions and the language of the Act as a whole support this plain language interpretation.

Illinois courts have ruled that section 3-106 provides immunity only where the liability is based on the existence of a condition of the property.  
McCuen v. Peoria Park District
, 163 Ill. 2d 125, 129, 643 N.E.2d 778, 780 (1994) (overruling 
Burdinie v. Village of Glendale Heights
, 139 Ill. 2d 501, 565 N.E.2d 654 (1990)); 
Barnett v. Zion Park District
, 267 Ill. App. 3d 283, 287, 642 N.E.2d 492, 494 (1994), 
aff'd
, 171 Ill. 2d 378, 665 N.E.2d 808 (1996).  In 
McCuen
, the court found that a public entity was not liable for injuries allegedly caused by the negligent handling of a mule team pulling a hayrack on recreational property because the liability was not based on the existence of a condition on the property.  The court stated:

"The handling of the mule team does not relate to the condition of the hayrack itself.  If otherwise safe property is misused so that it is no longer safe, but the property itself remains unchanged, any danger presented by the property is due to the misuse of the property and not to the condition of the property."  
McCuen
, 163 Ill. 2d at 129, 643 N.E.2d at 780.

Although the decision in 
McCuen
 established that the use of property, as opposed to the condition of property, is not provided immunity by section 3-106, the language used by the court is not decisive for this case because plaintiff alleges that the property was not otherwise safe.

Nonetheless, in overruling 
Burdinie v. Village of Glendale Heights
, 139 Ill. 2d 501, 565 N.E.2d 654 (1990), the 
McCuen
 court indicated that instruction to use property in an unsafe manner is not provided immunity by section 3-106.  In 
Burdinie
, the plaintiff complained of injuries from following instructions of a swimming instructor to jump into the shallow end of the pool.  The plaintiff made no allegations of improper maintenance, but the court applied section 3-106 and found defendant immune from charges of negligence.  The 
McCuen
 court explicitly overruled 
Burdinie
, stating, "The swimming instructor's negligence was unrelated to the condition of the swimming pool."  
McCuen
, 163 Ill. 2d at 130, 643 N.E.2d at 781.

The failure to act after a plaintiff has been injured has been found to be outside section 3-106.  In 
Barnett v. Zion Park District
, 267 Ill. App. 3d 283, 287, 642 N.E.2d 492, 494 (1994) 
aff'd
, 171 Ill. 2d 378, 665 N.E.2d 808 (1996), a 10-year-old boy drowned after allegedly slipping and falling off a diving board into a pool.  At least two patrons approached lifeguards regarding the accident, and the lifeguards failed to respond.  The Second District granted immunity under other sections of the Act but found that section 3-106 did not apply because the liability alleged by the plaintiff was based on the conduct of the lifeguards and not on any physical defects of the pool.  

In 
McCuen
 and 
Barnett
, Illinois courts made clear that section 3-106 does not apply  when the defendant's duty does not derive from the defendant's control of the property.  The facts of those cases did not force the courts to address whether section 3-106 would still apply if the injury would not have occurred but for the condition of the property. Nonetheless, the cases establish that the theory of liability which explains defendant's duty, and not the instrument that caused plaintiff harm, determines whether section 3-106 applies.

Interpreting the language of section 3-106 to provide immunity only when the defendant's duty derives from its control of the premises is consistent with the language of the Act as a whole.  The phrase "liability *** based on" is also used in section 2-101 of the Act, which provides, "Nothing in this Act affects the liability, if any, *** based on *** contract [and other specified legislation]."  745 ILCS 10/2-101 (West 1998).  The phrase has been interpreted to refer to the source of defendant's obligation.  For example, when discussing the application of section 2-101 to common carriers in 
Slaughter v. Rock Island County Metropolitan Mass Transit District
, 275 Ill. App. 3d 873, 656 N.E.2d 1118 (1995), the court stated, "[T]he use of the term 'liability' here simply preserves the standard of care imposed upon common carriers as to its passengers."  275 Ill. App. 3d at 875, 656 N.E.2d at 1120; see 
Cooper v. Bi-State Development Agency
, 158 Ill. App. 3d 19, 25, 510 N.E.2d 1288, 1292 (1987); see also 
DiMarco v. City of Chicago
, 278 Ill. App. 3d 318, 324, 662 N.E.2d 525, 529, 530 (1996) (liability based on contract means the theory of contract law, not merely the fact of a contract alleged in the plaintiff's complaint).  This indicates the legislature was referring to the source of a defendant's obligation when it used the same language in section 3-106.  See 
McMahan v. Industrial Comm'n
, 183 Ill. 2d 499, 513, 702 N.E.2d 545, 552 (1998) (the same words appearing in different parts of the same statute should be given the same meaning).

Interpreting the phrase "liability is based on" in section 3-106 as referring to the source of defendant's obligation is consistent with the language of the Act as a whole.  The majority of the provisions in the Act use the phrase "not liable for an injury caused by" to indicate the scope of immunity.  See, 
e.g.
, 745 ILCS 10/2-103, 2-104, 2-105, 2-106, 2-107, 2-108, 3-103, 3-104, 3-105, 3-107 (West 1998).  Such language is clearly directed at the causation of injury.  Section 2-101 is the only other section of the Act to define immunity in the terms of the phrase "liability *** based on."  The use of the phrase "liability *** based on," as opposed to the language of causation prevalent elsewhere in the Act, indicates that the source of defendant's obligation, and not the cause of plaintiff's injury, defines what is covered by section 3-106.  See 
In re K.C.
, 186 Ill. 2d 542, 549, 550, 714 N.E.2d 491, 495 (1999) (the use of certain language in one context and other language in another context indicates that the legislature intends different results). 

Defendant is not afforded protection under section 3-106 to the extent plaintiff alleges a duty on the part of defendant that does not derive from defendant's control of the property.  In this case, plaintiff alleges a duty on the part of defendant that derives from defendant's order and control over her.  In the initial order that denied the motion to dismiss, the trial court accurately described plaintiff's complaint:

"The plaintiff alleges that she was hired by or on behalf of the defendant board of education to work at a concession stand, that she is physically handicapped by cerebral palsy[,] and that she was ordered or required to use stairs wet from the weather outside."  

Defendant's use of order and control over plaintiff provides the basis of liability, or source of its obligation, for these allegations.  Like the instruction to jump into the shallow end of the pool in 
Burdinie
, plaintiff here allegedly was ordered to perform a task.  Like the lifeguards in 
Barnett
, defendant's alleged relationship to plaintiff, and not its control of the property, is the source of defendant's duty. 

Plaintiff argued to the trial court that her complaint should stand because of the special-duty doctrine.  We wish to make clear that our decision is not an application of that doctrine.  The special-duty doctrine, as an exception to the common law public-duty rule, imposes liability for negligence when a municipality is under a special duty to an individual. 
Harinek v. 161 North Clark Street Ltd. Partnership
, 181 Ill. 2d 335, 345, 692 N.E.2d 1177, 1183 (1998).  Our supreme court has found that allowing a special-duty exception to legislatively enacted immunity would violate the Illinois Constitution.  
Harinek
, 181 Ill. 2d at 347, 692 N.E.2d at 1183.  Our ruling here is not based on the special-duty doctrine, but on the plain language of the statute. 

B. Willful and Wanton Conduct

Even if section 3-106 applied to plaintiff's complaint, the complaint would survive  because plaintiff pled willful and wanton conduct.  In ruling on the motion for reconsideration, the trial court found that plaintiff failed to plead willful and wanton conduct, and the court dismissed count IV pursuant to section 2-615.  Motions to dismiss pursuant to section 2-615 admit all well-pleaded facts, together with all reasonable inferences that can be gleaned from those facts.  
Lawson v. City of Chicago
, 278 Ill. App. 3d 628, 634, 662 N.E.2d 1377, 1382 (1996).  They do not admit conclusions of law or conclusions of fact unsupported by allegations of specific fact.  
American Health Care Providers, Inc. v. County of Cook
, 265 Ill. App. 3d 919, 922, 638 N.E.2d 772, 775 (1994).  Appellate review of a section 2-615 dismissal is 
de novo
.  
Estate of Pessin v. State of Illinois Department of Transportation
, 302 Ill. App. 3d 417, 420, 705 N.E.2d 935, 937 (1999).  In deciding a motion to dismiss, the trial court should view the allegations in the complaint in a light most favorable to the plaintiff.  
Doe v. Calumet City
, 161 Ill. 2d 374, 385, 641 N.E.2d 498, 506 (1994).

The definition of willful and wanton conduct is often elusive, as the label is for conduct that is a hybrid between conduct considered negligent and conduct that is intentionally tortuous.  
Ziarko v. Soo Line R.R. Co.
, 161 Ill. 2d 267, 275, 641 N.E.2d 402, 406 (1994).  Policy considerations of punishment and retribution require an interpretation of willful and wanton approaching maliciousness when a court determines punitive damages, but allow for an interpretation approaching negligence when a court determines compensatory damages.  
Ziarko
, 161 Ill. 2d at 276, 641 N.E.2d at 407.  The Act provides the following definition:

" 'Willful and wanton conduct' as used in this Act means a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property."  745 ILCS 10/1-210 (West 1998).

The complaint is, therefore, sufficient if the allegations, when viewed in a light most favorable to the plaintiff, set forth facts from which a rational trier of fact could find that the defendant's conduct showed an utter indifference or conscious disregard for the plaintiff's safety.  See 
Doe v. Calumet City
, 161 Ill. 2d 374, 390, 641 N.E.2d 498, 506 (1994); see also 
O'Brien v. Township High School District 214
, 83 Ill. 2d 462, 468, 415 N.E.2d 1015, 1018 (1980) (same factual averments can support separate counts for negligence and willful and wanton conduct).  Plaintiff alleges the use of order and control over plaintiff that displayed utter indifference to plaintiff considering defendant's knowledge of the condition of the premises and plaintiff's physical impediment. 

Defendant contends that plaintiff made mere conclusory remarks regarding defendant's knowledge of the dangerous condition of the premises.  In several cases from the First District cited by defendant, the plaintiffs alleged that the defendant either "knew or should have known" of a dangerous condition–an allegation more speculative than the assertion that the defendant "knew" of a specific condition.  
Washington v. Chicago Board of Education
, 204 Ill. App. 3d 1091, 1093, 562 N.E.2d 541, 542 (1990) (the plaintiff alleged that the defendant "knew or should have known" of "dangerous, conspicuous[,] and icy conditions"); 
Ozuk v. River Grove Board of Education
, 281 Ill. App. 3d 239, 245, 666 N.E.2d 687, 691 (1996) (the plaintiff alleged that the defendant "knew or should have known of the dangerous and hazardous conditions").  Furthermore, 
Dunbar v. Latting
, another case cited by defendant, is distinguished because in 
Dunbar
, the court was faced with a motion for summary judgment.  
Dunbar v. Latting
, 250 Ill. App. 3d 786, 792, 621 N.E.2d 232, 238 (1993).  In 
Dunbar
, the court was not evaluating the sufficiency of the plaintiff's allegation but, in considering a summary judgment, was pointing out a lack of evidence of the defendant's knowledge.  
Dunbar
, 250 Ill. App. 3d at 792, 621 N.E.2d at 238.

Language in support of defendant's position is found in 
Winfrey v. Chicago Park District
, 274 Ill. App. 3d 939, 654 N.E.2d 508 (1995).  In 
Winfrey
, the First District found that the plaintiff had not alleged willful and wanton conduct despite alleging that the defendant had knowledge of a hole in a fence.  The court stated: "[Plaintiff] asserts the conclusion that defendant knew of the hole in the fence, but [plaintiff] states no facts to support this conclusion.  ***  [A] bare allegation of knowledge is insufficient and must be supported by facts such as allegations that the defendant removed safety equipment or had previous knowledge of accidents or had been put on notice of the danger."  
Winfrey v. Chicago Park District
, 274 Ill. App. 3d at 949, 654 N.E.2d at 516.  

Winfrey
 may be read to stand for the principle that mere knowledge of a physical condition, without notice of any possible danger presented by the condition, would not be a sufficient base for willful and wanton conduct.  That principle is correct.  The complaint should describe a condition that a defendant should suspect presents some danger.  If the danger is not self-evident, a plaintiff should have to allege that defendant should have suspected some risk of harm.  Restatement (Second) of Torts §343(a), at 215 (1965) (possessor of land is liable if he "knows or by the exercise of reasonable care would discover the condition[] and should realize that it involves an unreasonable risk of harm to such invitees").  Plaintiff has met this burden.  Plaintiff sufficiently described the condition of the premises by pleading, "[A] heavy, wet snow *** had fallen, and the whole stairs and tile flooring of the Red Hill High School was soppy wet."  In addition, unlike in 
Winfrey
, plaintiff alleged that defendant's employees knew the floor was "slippery." 

Defendant contends that 
Winfrey
 could be read in a second way–that plaintiff must allege how defendant became knowledgeable of the condition of the premises.  Defendant contends that an allegation of knowledge of the physical condition of premises by itself is a conclusory statement and not an allegation of fact.  If this is the rule in the First District, we decline to follow it.  A statement of a defendant's knowledge is an allegation of ultimate fact and not a conclusion.  
Oravek v. Community School District 146
, 264 Ill. App. 3d 895,  900, 637 N.E.2d 554, 558 (1994); 
Doner v. Phoenix Joint Stock Land Bank of Kansas City
, 381 Ill. 106, 115, 45 N.E.2d 20, 25 (1942); see 
Bowers v. Du Page County Regional Board of School Trustees District No. 4
, 183 Ill. App. 3d 367, 370, 380, 539 N.E.2d 246, 248, 255 (1989) (allegation that school district "knew or should have known" a rope ladder was dangerous was sufficient); 
Cory Corp. v. Hunter-Built Inc. of Chicago
, 91 Ill. App. 2d 303, 303, 234 N.E.2d 547, 547 (1968) (averment that the defendant knew of a change of ownership of a company was not conclusion of law but a statement of fact).  A plaintiff need not plead the evidentiary facts that he will use to prove the defendant's knowledge.  
Ward v. Community Unit School District No. 220
, 243 Ill. App. 3d 968, 974, 614 N.E.2d 102, 106 (1993). 

At the conclusion of its order, the trial court stated: "It does not seem that Plaintiff is alleging that Plaintiff was actually ordered, as a teacher orders a student, to engage in the activities which resulted in the fall.  If the latter is the case, then willful and wanton may have been alleged."  Nonetheless, plaintiff did allege such order and control on the part of defendant.  Plaintiff alleges that she was a student, that she had been asked by a teacher, Hank Ginder, to work as an employee of defendant at the concession stand, and that she had "commenced to work at the concession stand as she had been instructed to do" by Ginder.  The complaint then alleges that Ginder "asked" plaintiff to perform a "task" of contacting the employees of defendant who were on the gym floor to see if they wanted soft drinks.  A moderate reading of plaintiff's complaint could easily lead a rational trier of fact to conclude that Ginder had directed plaintiff to act, as a teacher orders a student. 

Plaintiff's contention that defendant's conduct was willful and wanton is underscored by plaintiff's alleged physical impairment.  Plaintiff alleged, "[Defendant] provided an unsafe place for a person such as plaintiff ***[,] who suffered from cerebral palsy and had difficulty walking and walked with a pronounced limp, to work in ***."  Knowledge of another person's impediment may call for a greater degree of care in relation to that individual.  See J.D. Lee & B.A. Lindahl, Modern Tort Law: Liability and Litigation §3.22 (1993).  This court has previously found willful and wanton conduct based in part on the physical limitations of students.  
Bertetto v. Sparta Community Unit District No. 140
, 188 Ill. App. 3d 954, 959, 544 N.E.2d 1140, 1144 (1989) (a student was not strapped in her wheelchair when it was pushed over a crevice in sidewalk); 
Landers v. School District No. 203, O'Fallon
, 66 Ill. App. 3d 78, 82, 383 N.E.2d 645, 648 (1978) (an obese student was required to perform a somersault in physical education class).  If the allegations in plaintiff's complaint are proven, a rational trier of fact could decide that defendant took a course of action that showed an utter indifference or conscious disregard for plaintiff's safety. 

C. Natural Accumulation Rule

Defendant also contends that plaintiff's complaint should be dismissed because of the natural-accumulation rule.  The trial court's decision did not address the natural-accumulation rule, but for the remand we wish to make clear that this rule does not defeat plaintiff's complaint.  Under the natural-accumulation rule, a landowner does not have a duty to remove natural accumulations of snow and ice.  
Kellermann v. Car City Chevrolet-Nissan, Inc.
, 306 Ill. App. 3d 285, 288, 713 N.E.2d 1285, 1289 (1999).  Illinois courts have justified the rule on the policy reasons that it would be unreasonable in our northern climate to force property owners to expend the money and labor necessary to remove natural accumulations and the landowner should be able to expect that an invitee will observe the danger and protect herself against it.  
Kellermann
, 306 Ill. App. 3d at 289, 713 N.E.2d at 1289.  Unlike cases where the natural-accumulation rule operates to bar a plaintiff's complaint, here the alleged duty violated by defendant was not the mere maintenance of the premises.  Plaintiff alleges that defendant's liability stems from the order and control it had over plaintiff, particularly considering plaintiff's physical impediment.  The expense of maintaining the property and the onus of assuming a risk usually placed on a plaintiff do not explain the obligations of the parties here.  In this case, defendant's potential liability derives from the order and control defendant had over plaintiff.

Similarly, defendant contends that it is not liable because the alleged danger of the premises would have been open and obvious to plaintiff.  Illinois courts have held that property owners are usually not liable for dangers that are open and obvious to plaintiffs.  See 
Miller v. Archer-Daniels-Midland Co.
, 261 Ill. App. 3d 872, 634 N.E.2d 1108 (1994).  However, an owner of land is still responsible if he " 'should anticipate the harm despite such knowledge or obviousness.' "  (Court's emphasis omitted.)  
LaFever v. Kemlite Co.
, 185 Ill. 2d 380, 390, 706 N.E.2d 441, 447 (1998) (quoting Restatement (Second) of Torts §343A(1), at 218 (1965)).  For example, a defendant is still liable if he could reasonably foresee that a plaintiff would deliberately encounter a risk in order to fulfill some other obligation, such as that to an employer.  
LaFever
, 185 Ill. 2d at 391, 706 N.E.2d at 448.  Based on the allegations in plaintiff's complaint, a fact-finder may conclude that defendant could reasonably foresee that plaintiff would encounter a risk for fear of negative consequences from not performing the task assigned to her.  As such, an apprehension of the hazard by plaintiff does not operate to bar her complaint. 

Defendant also contends that it is provided immunity under other sections of the Act.  Although the trial court's order did not address defendant's contention, we wish to make clear that these sections of the Act are not grounds for a dismissal of plaintiff's complaint.  Section 3-102(a) of the Act (745 ILCS 10/3-102(a) (West 1998)) provides immunity for actions arising from a local public entity's maintenance of property, and section 3-105(a) (745 ILCS 10/3-105(a) (West 1998)) provides immunity for injury caused by the effect of weather conditions on certain public property.  Like section 3-106 and the natural-accumulation rule, these sections do not provide immunity to the extent that plaintiff's injuries resulted from defendant's order and control over her. 

Accordingly, the order of the circuit court of Lawrence County dismissing counts II and IV of plaintiff's complaint is reversed, and this cause is remanded for further proceedings consistent with this opinion.

Reversed; cause remanded.

CHAPMAN, P.J., and HOPKINS, J., concur.

                                      

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 08/09/01.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.