# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Leja v. Community Unit School District 300*, 2012 IL App (2d) 120156

---

| | |
|---|---|
| Appellate Court Caption | ALLISON LEJA, a Minor, by her Father and Next Friend, GARY LEJA, Plaintiff-Appellant, v. COMMUNITY UNIT SCHOOL DISTRICT 300, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-12-0156 |
| Filed<br>Rehearing denied | November 6, 2012<br>December 21, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The count of plaintiff's complaint alleging that her school district was guilty of willful and wanton conduct in connection with the injuries she suffered when the volleyball net crank she was turning "broke loose" or "snapped back" and hit her face was properly dismissed on the ground that she failed to allege facts that would permit an inference that the district was on notice of a high risk of injury posed by the net equipment, regardless of the warning label on the equipment, and further, the failure to direct plaintiff to the manufacturer's instructions and warning label did not constitute willful and wanton conduct. |
| Decision Under Review | Appeal from the Circuit Court of McHenry County, No. 10-LA-317; the Hon. Thomas A. Meyer, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Law Offices of Joseph V. Roddy, of Chicago (Jeanne N. Brown and
Joseph V. Roddy, of counsel), for appellants.

Rosa M. Tumialan, of Dykema Gossett PLLC, of Chicago, and Charles
A. LeMoine and James R. Dougherty, both of Dykema Gossett PLLC, of
Lisle, for appellee.

Panel

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Justices Schostok and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Allison Leja, appeals from the dismissal of her second amended complaint
against defendant, Community Unit School District 300. Plaintiff, a student at a high school
owned and operated by defendant, allegedly was injured in her school's gymnasium when
a volleyball net crank she was turning either "broke loose" or "snapped back" and struck her
in the face. Plaintiff alleged in her two-count second amended complaint that defendant was
negligent (count I) or engaged in willful and wanton conduct (count II). The trial court
dismissed count I pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Code) (735
ILCS 5/2-619(a)(9) (West 2008)) after determining that defendant was immune from liability
for negligence under section 3-106 of the Local Governmental and Governmental Employees
Tort Immunity Act (Act) (745 ILCS 10/3-106 (West 2008)). The court then dismissed count
II pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2008)) after determining
that plaintiff did not allege sufficient facts to plead willful and wanton conduct under the Act.
Both dismissals were with prejudice. On appeal, plaintiff challenges the dismissal of count
II only. Plaintiff argues that the warning label on the volleyball net crank was sufficient to
put defendant on notice that the crank posed a risk of injury, and that instructing plaintiff to
operate the crank bearing the warning label evinced an utter indifference to or conscious
disregard for plaintiff's safety. For the following reasons, we affirm.

¶ 2                                    BACKGROUND

¶ 3    The relevant background begins with the filing of plaintiff's second amended complaint.
Count II of the complaint alleged the following facts. On September 3, 2009, plaintiff was
a student at a high school owned and operated by defendant. On that date, plaintiff was
operating a volleyball net crank on equipment provided by defendant, in the gymnasium of
her high school. The crank was attached to a "collar" that was wrapped around a "standard."
Affixed to the collar was a warning label stating, "CAUTION DO NOT OVERTIGHTEN -
MAY CAUSE INJURIES OR DAMAGE TO EQUIPMENT." The collar was attached to the

-2-

standard by set screws, which needed to be tightened to prevent movement. The manufacturer's instructions directed the user to securely tighten the set screws prior to use. The instructions also stated, "Cable tension must be released before adjusting net height," and warned, "Failure to do so may cause damage to the equipment, or cause personal injury."

¶ 4　　Plaintiff further alleged that defendant knew or should have known that the volleyball net equipment was "unsafe, dangerous and/or defective." Defendant was "aware of prior difficulties with the volleyball net equipment, including but not limited to, the propensity of the standards to slide up and down if not tightened properly, the difficulty with the standards fitting into the floor properly, and the difficulties with the crank itself." Defendant also knew or should have known that the volleyball net equipment, which it had been using on nearly a daily basis for more than a year, was likely to cause injuries, "due to its tendency to 'snap back,' its unsecured collar, and/or overtightening of the equipment."

¶ 5　　Plaintiff alleged that, notwithstanding the foregoing, defendant, through its employees or agents and "with an utter indifference and conscious disregard" for plaintiff's safety, did the following:

"a. Instructed [p]laintiff to operate the unsafe, defective, and/or dangerous equipment knowing such equipment would likely cause injury to the [p]laintiff.

b. Failed to ensure that the set screws on the collar were securely tightened prior to use, pursuant to product manufacturer's instructions.

c. Failed to instruct and/or explain to the [p]laintiff the proper way to operate the equipment, notwithstanding the fact that [d]efendant knew of [*sic*] should have known of the prior difficulties with the volleyball net equipment and its propensity to cause harm to an individual through the labels provided on the volleyball equipment itself, the product manufacturer's manuals and/or instructions, Consumer and Product Safety Commission reports, product descriptions, and common sense.

d. Failed to inform the [p]laintiff of the dangers associated with the equipment, notwithstanding the fact that [d]efendant knew of [*sic*] should have known of the prior difficulties with the volleyball net equipment and its propensity to cause harm to an individual through the labels provided on the volleyball equipment itself, the product manufacturer's manuals and/or instructions, Consumer and Product Safety Commission reports, product descriptions, and common sense.

e. Failed to prevent [p]laintiff from operating the dangerous equipment, notwithstanding the fact that [d]efendant knew of [*sic*] should have known of the prior difficulties with the volleyball net equipment and its propensity to cause harm to an individual through the labels provided on the volleyball equipment itself, the product manufacturer's manuals and/or instructions, Consumer and Product Safety Commission reports, product descriptions, and common sense."

While plaintiff was operating the crank, thereby exerting tension on the collar, "the collar itself either broke loose or the crank itself snapped back, causing the [p]laintiff to be struck in the face by the crank."

¶ 6　　Defendant moved, pursuant to section 2-615 of the Code, to dismiss count II of plaintiff's second amended complaint, arguing that plaintiff's factual allegations were insufficient to

state a cause of action based on willful and wanton conduct. The trial court agreed with defendant and granted its motion. As stated, the trial court dismissed both counts of plaintiff's second amended complaint with prejudice. This timely appeal followed.

¶ 7                                                    ANALYSIS

¶ 8          On appeal, plaintiff argues that the trial court erred in dismissing count II of her second amended complaint, because she alleged sufficient facts to state a cause of action based on defendant's alleged willful and wanton conduct. In particular, plaintiff argues that the warning labels on the volleyball net crank were sufficient to put defendant on notice that the crank posed a risk of injury, and that instructing plaintiff to operate the crank bearing the warning label evinced an utter indifference to or conscious disregard for plaintiff's safety.

¶ 9          A complaint is subject to dismissal under section 2-615 if it fails to state a cause of action upon which relief can be granted. *Floyd v. Rockford Park District*, 355 Ill. App. 3d 695, 700 (2005). When reviewing the dismissal of a complaint pursuant to section 2-615, a court must accept as true all well-pleaded facts and reasonable inferences drawn therefrom and view the complaint in the light most favorable to the plaintiff. *Floyd*, 355 Ill. App. 3d at 699-700. The complaint must allege sufficient facts to bring a claim within a legally recognized cause of action. *Thurman v. Champaign Park District*, 2011 IL App (4th) 101024, ¶ 8. A court should dismiss a cause of action pursuant to section 2-615 only if it is apparent that the plaintiff can prove no set of facts that would entitle him or her to recover. *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 13. Our review of a section 2-615 dismissal is *de novo*. *Simpkins*, 2012 IL 110662, ¶ 13.

¶ 10         Plaintiff concedes that defendant is a local public entity immune from liability for negligence under section 3-106 of the Act. That section specifically provides:

"Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury." 745 ILCS 10/3-106 (West 2008).

Accordingly, under section 3-106, defendant is liable to plaintiff only if it proximately caused plaintiff's injuries by willful and wanton conduct.

¶ 11         Section 1-210 of the Act defines "willful and wanton conduct" as follows:

" 'Willful and wanton conduct' as used in this Act means a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property. This definition shall apply in any case where a 'willful and wanton' exception is incorporated into any immunity under this Act." 745 ILCS 10/1-210 (West 2008).

Plaintiff does not allege that defendant's conduct was intentional. Thus, our inquiry is limited to the nonintentional aspect of the Act's definition of willful and wanton conduct, *i.e.*, whether defendant engaged in "a course of action which *** shows an utter indifference to

or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210 (West 2008). This definition of willful and wanton conduct contemplates more than mere inadvertence, incompetence, or unskillfulness. *Geimer v. Chicago Park District*, 272 Ill. App. 3d 629, 637 (1995). Thus, courts employing the Act's definition have found willful and wanton conduct to exist where a public entity knew of a dangerous condition yet took no action to correct the condition (*e.g.*, *Muellman v. Chicago Park District*, 233 Ill. App. 3d 1066, 1069 (1992)), where a public entity was aware of prior injuries caused by a dangerous condition but took no action to correct it (*e.g.*, *Carter v. New Trier East High School*, 272 Ill. App. 3d 551, 557-58 (1995)), and where a public entity intentionally removed a safety feature from recreational property despite the known danger of doing so (*e.g.*, *Benhart v. Rockford Park District*, 218 Ill. App. 3d 554, 559-60 (1991)). Although a determination of willful and wanton conduct must be based on the specific facts of each case (*Burke v. 12 Rothschild's Liquor Mart, Inc.*, 148 Ill. 2d 429, 451 (1992)), generally, to be guilty of willful and wanton conduct, a defendant " 'must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of the surrounding circumstances and existing conditions, that his conduct will *naturally and probably result in injury*' " (emphasis added) (*Oelze v. Score Sports Venture, LLC*, 401 Ill. App. 3d 110, 122-23 (2010) (quoting *Bartolucci v. Falleti*, 382 Ill. 168, 174 (1943))). See also *Choice v. YMCA of McHenry County*, 2012 IL App (1st) 102877, ¶ 72 (" 'It is essential that plaintiff allege and establish that when the defendant acted, or failed to act, he had knowledge, or should have had the knowledge under the circumstances, that his conduct *posed a high probability of serious physical harm to others*.' " (Emphasis added.) (quoting *Pomrehn v. Crete-Monee High School District*, 101 Ill. App. 3d 331, 335 (1981))). While the issue of whether a defendant's actions amounted to willful and wanton conduct is usually a question of fact for a jury to determine, a court may decide as a matter of law whether a plaintiff's allegations of willful and wanton conduct are sufficient to state a cause of action. *Callaghan v. Village of Clarendon Hills*, 401 Ill. App. 3d 287, 300-01 (2010).

¶ 12 The central issue in this case is whether plaintiff alleged sufficient facts that, taken as true, would permit the inference that defendant was conscious that directing plaintiff to operate the volleyball net crank would "naturally and probably result in injury" or "posed a high probability of serious physical harm." At oral argument, plaintiff acknowledged that she had not alleged that defendant was aware of prior injuries caused by the crank, which would have put defendant on notice of such a risk. She instead argued that the warning label on the crank, standing alone, was sufficient for this purpose. Additionally, in her brief, plaintiff argues that "the clearly worded warning on the crank itself, as well as the instruction manuals that accompanied the equipment," were sufficient to put defendant on notice of a high risk of injury.

¶ 13 Setting aside plaintiff's warning-label argument for a moment, we first conclude that plaintiff alleged no other facts that would permit the inference that defendant was conscious that instructing plaintiff to operate the volleyball net crank would "naturally and probably result in injury" or "posed a high probability of serious physical harm." Even accepting as true plaintiff's allegation that defendant was aware of "prior difficulties" with the equipment–an allegation that is too generic to be of any assistance–the allegation does not

-5-

support plaintiff's claim of willful and wanton conduct unless the "prior difficulties" were ones that defendant knew or should have known had resulted in injury or had a high probability of resulting in injury. Addressing plaintiff's more specific allegation that defendant knew that the crank had a tendency to "snap back," it too does not establish that defendant was conscious that instructing plaintiff to use the crank would likely result in injury. Knowledge of the crank's tendency to "snap back," without additional factual allegations showing that defendant was aware or should have been aware of a serious danger posed, does not cross the threshold required for willful and wanton conduct. See *Thurman*, 2011 IL App (4th) 101024, ¶ 17 (upholding dismissal of the plaintiffs' complaint where the "[p]laintiffs contend[ed] the structural steel beams in defendant's facility were a danger but alleged no facts showing defendant had prior notice of injuries caused by the beams or which occurred in a manner similar to those sustained by [the plaintiff]"). Unaware of such a danger, defendant arguably may have been negligent or careless, but it did not act with an utter indifference to or conscious disregard for plaintiff's safety.

¶ 14    Similarly insufficient are plaintiff's allegations that defendant knew or should have known that the equipment was likely to cause injury due to "its unsecured collar" or due to "overtightening of the equipment." Plaintiff did not allege that the collar's set screws were not tightened at the time of plaintiff's injury, nor did plaintiff allege that defendant was aware that any of the screws were not tightened. Likewise, while plaintiff alleged that a label on the collar warned of the dangers of overtightening the crank, plaintiff did not allege that the crank was in fact overtightened or that defendant was aware of any overtightening. For either of these allegations to pass muster, plaintiff would have had to allege that the specified condition caused plaintiff's injury and that defendant knew or should have known of the condition and of the danger and high risk of injury it posed. See *Winfrey v. Chicago Park District*, 274 Ill. App. 3d 939, 946 (1995) (holding that the plaintiff's complaint was insufficient where it did not allege, for example, "that defendant had received complaints about the condition of the fence or that defendant ignored the problem after inspecting the fence"); see also *Vilardo v. Barrington Community School District 220*, 406 Ill. App. 3d 713, 726 (2010) ("[P]laintiff has failed to allege that defendant had any knowledge, constructive or actual, that would have alerted it to the risk of a ball passing through the protective screen and injuring plaintiff.").

¶ 15    Turning to plaintiff's warning-label argument, we conclude that it has no merit. In support of her argument, plaintiff excerpts the following language from the comments to section 402A of the Restatement (Second) of Torts: "Where warning is given, the seller may reasonably assume that it will be read and heeded ***." Restatement (Second) of Torts § 402A cmt. j (1965). Relying on the excerpted language, plaintiff argues that we can presume that defendant had knowledge of the dangerous propensity of the equipment because we can presume that defendant read the warning label. Plaintiff conveniently ignores the remainder of the quoted sentence, which states, "and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous." Restatement (Second) of Torts § 402A cmt. j (1965). As the full quotation shows, a warning label makes a product *safer* by informing the user of the proper method for using the product. Plaintiff cites no other authority and conceded at oral argument that she

had found none that supports her position that, for purposes of alleging willful and wanton conduct, a warning label is sufficient to put a defendant on notice that a product poses a high risk of injury. While we are cognizant of the unfortunate circumstance this case presents–that a student was injured while operating a crank bearing a warning label–we reject plaintiff's contention that instructing a student to use a product bearing such a label can evince an utter indifference to or a conscious disregard for the student's safety, merely because the label warns of an underlying danger.

¶ 16 Nor can instructing a student to use a product without first directing her to read the manufacturer's instructions be sufficient, without more, to allege willful and wanton conduct. At oral argument, plaintiff urged that, because defendant purchased the volleyball net equipment and possessed the instructions, defendant was in a better position to know of the equipment's dangers and had a duty to warn plaintiff of the dangers. In her brief, plaintiff cites several product liability cases against manufacturers and suppliers involving failure-to-warn claims and argues that defendant occupied a position equivalent to that of a supplier.

¶ 17 Plaintiff's argument suffers from fatal flaws. First, defendant was not a supplier or a seller of the volleyball net equipment, but merely a consumer of it. The principles of product liability law that plaintiff cites do not apply to defendant in this case. Additionally, even if we were to accept plaintiff's argument that defendant, as purchaser of the equipment, was in a better position to know of the equipment's dangers and therefore had a duty to warn plaintiff of those dangers, her argument would nevertheless fail. Failure-to-warn claims are negligence actions. While it is conceivable that a defendant's failure to warn could, under certain circumstances, rise to the level of willful and wanton conduct, such a claim would require factual allegations showing that, under the circumstances, the defendant knew or should have known that its failure to warn would "naturally and probably result in injury" or "posed a high probability of serious physical harm." See *Thurman*, 2011 IL App (4th) 101024, ¶¶ 14-17 (holding that the defendant's alleged failure to warn of a structural steel beam partially concealed behind a tarp, without allegations of prior injuries or of a defective condition, did not rise to the level of willful and wanton conduct). Finally, as stated above, while the manufacturer's instructions directed the user of the equipment to tighten the set screws before use, plaintiff did not allege that the set screws were in fact not tightened, nor did she allege that defendant was aware of any such fact or of any danger so posed. Had the set screws in fact not been tightened, and had defendant known of this condition and had reason to know that it posed a high risk of injury, then directing plaintiff to read the manufacturer's instructions may have been one way for defendant to show concern for plaintiff's safety. But, on the facts alleged, defendant's failure to direct plaintiff to the manufacturer's instructions was not sufficient to constitute willful and wanton conduct.

¶ 18 The two out-of-state cases upon which plaintiff relies in support of her warning-label and product-instructions arguments are inapposite. The first case, *Billiar v. Minnesota Mining & Manufacturing Co.*, 623 F.2d 240 (2d Cir. 1980), involved negligence, not willful and wanton conduct, arising out of a failure to warn the plaintiff of the dangers of a caustic cleaning solution. *Billiar*, 623 F.2d at 243. Plaintiff places great emphasis on the fact that, in *Billiar*, the defendant employer "did not require [the] plaintiff to read the warnings printed on the [cleaning solution container]." *Billiar*, 623 F.2d at 247. Yet, this was but one piece

of evidence among many others establishing that the defendant had been negligent in failing to advise the plaintiff of the "extreme hazard" posed by the cleaning solution. *Billiar*, 623 F.2d at 247. *Billiar* offers no support for plaintiff's argument that a warning label in a case involving alleged willful and wanton conduct can form the basis for a defendant's knowledge of a danger that poses a high probability of injury.

¶ 19    The second case on which plaintiff relies, *Everhart v. O'Charley's Inc.*, 683 S.E.2d 728 (N.C. Ct. App. 2009), did involve willful and wanton conduct but is distinguishable on other grounds. In *Everhart*, a server employed by the defendant accidentally filled the plaintiff's water glass with a cleaning solution instead of water. *Everhart*, 683 S.E.2d at 732. The plaintiff drank the solution and then became sick; she spit up some of the liquid onto her shirt, which immediately discolored it, and went to the bathroom to vomit. *Everhart*, 683 S.E.2d at 732. The defendant's dining room manager then approached the plaintiff's husband and proceeded to fill out an incident report form, as the defendant required, ignoring the husband's requests that he find out what the plaintiff had ingested. *Everhart*, 683 S.E.2d at 732, 735. Had the manager located the cleaning solution bottle, the warning label would have provided first aid protocol, including not to induce vomiting. *Everhart*, 683 S.E.2d at 736. The court reasoned that the evidence was sufficient to support the jury's finding of willful and wanton conduct, because, although the manager knew that the plaintiff "had ingested some unknown substance that had made her sick, he refused to find out what she had actually been served or the first aid protocol for that substance before completing [his employer's] incident report form." *Everhart*, 683 S.E.2d at 736. *Everhart* provides no support for plaintiff's warning-label argument, because the warning label in *Everhart* was not the source of the defendant's knowledge of the danger facing the plaintiff; rather, the surrounding circumstances–including that the plaintiff had ingested a cleaning solution and had immediately become sick–put the defendant on notice of such danger. *Everhart*, 683 S.E.2d at 736. It was the defendant's failure to locate the warning label and abide by its first aid protocol in the face of this known danger that evinced an utter indifference to and a conscious disregard for the plaintiff's safety. *Everhart*, 683 S.E.2d at 737 (reasoning that the defendant turned "an intentional blind eye to danger" that showed a "deliberate disregard" for the plaintiff's safety).

¶ 20    Plaintiff also refers to a report from the National Electronic Injury Surveillance System of the United States Consumer Product Safety Commission, which was attached to plaintiff's response to defendant's motion to dismiss, in support of her argument that defendant should have known of a danger posed by the crank. The report lists a single incident in which a woman was tightening a volleyball net crank and sustained a laceration when the crank hit her in the forehead. It is unclear how the report, of which plaintiff did not allege defendant had any knowledge prior to plaintiff's incident, has any relevance to the issue at hand, and plaintiff offers no argument explaining any such relevance.

¶ 21    Since we have determined that plaintiff failed to allege facts that, taken as true, would permit the inference that defendant was on notice of a high risk of injury posed by the volleyball net equipment, plaintiff's reliance on *Manuel v. Red Hill Community Unit School District No. 10 Board of Education*, 324 Ill. App. 3d 279 (2001), and *Peters v. Herrin Community Unit School District No. 4*, 401 Ill. App. 3d 356 (2010), is misplaced. Plaintiff

relies on *Manuel* and *Peters* in arguing that her allegation that defendant instructed her to "engage in a dangerous act" was sufficient to plead willful and wanton conduct under the Act. In *Manuel*, the court reversed the dismissal of the plaintiff's complaint alleging willful and wanton conduct in that the defendant instructed the plaintiff, who had an impaired gait due to cerebral palsy, to perform a task that required her to traverse stairs that were "slippery" and "soppy wet" with melted snow. *Manuel*, 324 Ill. App. 3d at 289-91. The court clarified that, while a plaintiff alleging willful and wanton conduct under the Act is not required to allege "how [a] defendant became knowledgeable of the condition of the premises," the plaintiff is required to allege more than "mere knowledge of a physical condition, without notice of any possible danger presented by the condition." *Manuel*, 324 Ill. App. 3d at 289-90. The court concluded that the plaintiff had met this burden by alleging that the defendant knew that the stairs were "slippery" and "soppy wet" and posed a danger to the disabled student. *Manuel*, 324 Ill. App. 3d at 289-90.

¶ 22     In *Peters*, the court relied on *Manuel* and, likewise, reversed the dismissal of the plaintiff's complaint alleging willful and wanton conduct under the Act. *Peters*, 401 Ill. App. 3d at 362-63. The minor plaintiff in *Peters*, who was attending a football camp, alleged that the defendants instructed him to run a path from the dressing room to the practice field that required him to encounter a bumper located at the edge of a shot-put pit and obscured by weeds. *Peters*, 401 Ill. App. 3d at 362-63. While running the path, the plaintiff tripped over the bumper and was injured. *Peters*, 401 Ill. App. 3d at 362. The plaintiff alleged that the defendants knew or should have known that the obscured bumper created a dangerous condition. *Peters*, 401 Ill. App. 3d at 358. The court concluded: "If the allegations in the complaint can be proven, a rational trier of fact could decide that defendants took a course of action that showed an utter indifference to or conscious disregard for [the plaintiff's] safety." *Peters*, 401 Ill. App. 3d at 363.

¶ 23     Unlike the plaintiffs in *Manuel* and *Peters*, who alleged that the defendants in those cases were on notice of "slippery" and "soppy wet" stairs that posed a danger to a disabled student (*Manuel*) and of a bumper obscured by weeds lying in a minor's path of travel (*Peters*), plaintiff in this case has not alleged facts from which it could be inferred that defendant, at the time it instructed plaintiff to operate the crank, was conscious of a danger that created a high probability of injury. We read both *Manuel* and *Peters* as holding that the plaintiffs' factual allegations in those cases were minimally sufficient to allege that the defendants, at the time they instructed the plaintiffs to encounter the specific dangerous conditions at issue, were conscious that the conditions would "naturally and probably result in injury" or "posed a high probability of serious physical harm." Although the plaintiffs in *Manuel* and *Peters* did not allege facts showing "how" the defendants became aware of the dangers posed by the conditions, they did allege facts from which consciousness of the dangers posed could be inferred. If the football coaches in *Peters* knew of the obscured bumper, then directing the plaintiff to run through the weeds obscuring the bumper could have evinced consciousness of a danger and an utter indifference to or conscious disregard for the plaintiff's safety. Likewise, if the teacher in *Manuel* was aware of the plaintiff's unsteady gait and of the "slippery" and "soppy wet" stairs, directing her to traverse the stairs might have evinced consciousness of a danger and an utter indifference to or conscious disregard for the

-9-

plaintiff's safety. Here, by contrast, plaintiff's second amended complaint did not contain minimally sufficient allegations of fact from which it could be inferred that defendant, at the time it instructed plaintiff to operate the crank, was conscious of any danger that would "naturally and probably result in injury" or that "posed a high probability of serious physical harm." As alleged, defendant may have been aware of some "prior difficulties" with the crank but apparently had used it "on nearly a daily basis" for more than a year without incident.

¶ 24　　The three other Illinois cases on which plaintiff relies are similarly distinguishable. In *Bowers v. Du Page County Regional Board of School Trustees District No. 4*, 183 Ill. App. 3d 367 (1989), the court, in an opinion with little-to-no supporting analysis, concluded that the plaintiff had sufficiently pleaded willful and wanton conduct. *Bowers*, 183 Ill. App. 3d at 380. The plaintiff had alleged, *inter alia*, that the defendant "knowingly and intentionally or with reckless disregard" provided inadequate supervision, failed to provide adequate padding, and failed to provide adequate instruction to the plaintiff, who fell in gym class while climbing a 20- to 25-foot-high rope ladder. *Bowers*, 183 Ill. App. 3d at 380. As in *Manuel* and *Peters*, the factual allegations in *Bowers* were minimally sufficient to permit an inference that the defendant was conscious that its acts, or failures to act, posed a high probability of serious injury to the plaintiff.

¶ 25　　In *Landers v. School District No. 203*, 66 Ill. App. 3d 78 (1978), the court upheld a jury verdict in favor of the plaintiff, who had alleged willful and wanton conduct by a defendant who instructed her to perform a backward somersault maneuver despite her obesity and her fear of the maneuver. *Landers*, 66 Ill. App. 3d at 82. A teacher employed by the defendant had testified that "she knew prior to the accident that if a performer did not have sufficient arm strength to take the weight of the body and push it backwards that the weight would drop onto the person's neck." *Landers*, 66 Ill. App. 3d at 82. In *Bernesak v. Catholic Bishop*, 87 Ill. App. 3d 681 (1980), the court affirmed a jury verdict in favor of the plaintiff where the defendant's employee had permitted the plaintiff to play "crack-the-whip," a game the employee "knew to be risky and dangerous." *Bernesak*, 87 Ill. App. 3d at 686. While the factual allegations of the plaintiffs' complaints were not at issue in *Landers* and *Bernesak*, those cases support our conclusion that a plaintiff pleading willful and wanton conduct is required to allege some facts showing that the defendant was aware of circumstances that posed a serious danger.

¶ 26　　　　　　　　　　　　　　　CONCLUSION

¶ 27　　For the foregoing reasons, the judgment of the circuit court of McHenry County is affirmed.

¶ 28　　Affirmed.