MICHELLE VALENTINE LANDERS, Plaintiff-Appellee, *v.* SCHOOL DISTRICT NO. 203, O'FALLON, Defendant-Appellant.

Fifth District   No. 77-181

Opinion filed November 2, 1978.

Howard Boman, of Dunham, Boman & Leskera, of East St. Louis (Robert D. Francis, of counsel), for appellant.

John P. Kujawski and David J. Letvin, both of Cohn, Carr, Korein, Kunin, Schlichter & Brennan, of East St. Louis, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

This is an appeal by the defendant, School District No. 203 (school district), from a judgment of the circuit court of St. Clair County entered on a jury verdict in favor of plaintiff, Michelle Valentine Landers, in the amount of $77,000.

On November 30, 1967, the 15-year-old plaintiff Michelle Valentine, now Michelle Landers, received serious injuries to her neck while attempting to perform a tumbling maneuver known as a backward somersault during a physical education class at O'Fallon Senior High School where she was enrolled as a student. The instant cause was tried in the circuit court on the theory that the plaintiff's injuries were proximately caused by the wilful and wanton misconduct of one of the school district's physical education teachers.

■■ The school district contends here that the trial court erred in denying defendant's motion to dismiss the complaint's allegations of wilful and wanton misconduct and that there was insufficient proof to support the finding of its guilt of wilful and wanton misconduct. We shall address only the issue as to the sufficiency of the evidence. The school district is

precluded from raising the issue of the sufficiency of the complaint in this appeal since it failed to raise that matter in its post-trial motion. *Chloupek v. Jordan* (1977), 49 Ill. App. 3d 809, 364 N.E.2d 650; *Mangan v. F.C. Pilgrim & Co.* (1975), 32 Ill. App. 3d 563, 336 N.E.2d 374; Ill. Rev. Stat. 1977, ch. 110, par. 68.1; ch. 110A, par. 366(b)(2)(iii).

In November of 1967, Michelle Valentine was one of approximately 40 students in a physical education class at O'Fallon Senior High School under the supervision of instructor Mary Ellen McElroy. At the time, Michelle was 5' 6" tall and weighed around 180 pounds. About one week before the occurrence of the accident, Michelle's class ceased its outside activities and began a gymnastics program in the school's gymnasium. Michelle's class shared the gymnasium with another class under the supervision of physical education instructor Melberta Metias. That class also was engaged in a gymnastics program.

Part of the program involved the execution of various tumbling maneuvers, including the backward somersault. The backward somersault is done usually from a sitting position. The performer rolls backward with his knees bent downward toward the chest, supporting his weight first on the buttocks, then on the upper back. When the performer's head touches the ground, he reaches his hands back beside his head and pushes on the mat to transfer his weight to the arms as the motion continues in the same direction. The movement is completed when the performer's weight is supported on his feet.

As a means of familiarizing the students with how the maneuvers they were expected to execute were done, the instructors had them observe another student as she performed them. The plaintiff received no personal instruction or attention from McElroy with respect to the backward somersault prior to the accident.

According to Michelle, on the day before she was injured, she went to instructor McElroy's office after gym class. She told the instructor that she was afraid to do the backward somersault and that she did not know how to perform it. She told McElroy that she had done the maneuver six or seven times as a small child but that she had not done them properly. On those occasions, the activity had given her headaches and bothered her neck. She further informed the instructor that she was afraid to attempt the backward somersault because she was big and heavy. The instructor offered to help Michelle after school but was told that this was not possible since plaintiff rode the bus. The instructor then told Michelle to see her the next day. No discussion was had concerning Michelle's weight or whether she was strong enough to do the stunt.

During class the following day, November 30, 1967, plaintiff was tested on two other movements. McElroy then asked Michelle if she could do the backward somersault. After Michelle told her she could not,

the instructor told her to practice it. Michelle reminded the instructor that she had said that she would help her but was told that the instructor could not help her then and that she should get another student doing the backward roll to assist her. At trial, McElroy testified that she could not remember having either of these conversations.

Michelle was still fearful that she could not do the maneuver. Nevertheless, she followed her instructor's suggestion and asked a fellow student named Cuffy, whom Michelle thought had completed the maneuver, to "spot" for her. All of the students had been instructed in one class period as to how to be spotters. It was Michelle's understanding that a spotter was merely someone to assist the performer by breaking her fall should she lose her balance. On the first attempt, Michelle's head went to one side. Since she knew such an execution was unacceptable, she attempted the maneuver again. When Michelle reached the point in the movement where all of her body was suspended above the neck, she was unable to push her weight over with her arms. She heard her neck snap.

At the hospital, Michelle's neck injury was diagnosed as a subluxation. This is an alteration of the normal alignment of the vertebral bodies. When conservative therapy failed to correct the condition, an orthopedic surgeon successfully performed a posterior cervical fusion, grafting a bone from the plaintiff's hip onto four vertebrae in the neck.

■■ The applicable standard for imposition of liability in cases involving supervision of school activities is set forth in section 24—24 of the School Code which provides in pertinent part:

> "In all matters relating to the discipline in and conduct of the schools and the school children, they [teachers and other educational employees] stand in the relation of parents and guardians to the pupils. This relationship shall extend to all activities connected with the school program and may be exercised at any time for the safety and supervision of the pupils in the absence of their parents or guardians." (Ill. Rev. Stat. 1967, ch. 122, par. 24—24.)

This section confers the status of parent or guardian upon educators in matters relating to discipline and supervision of school activities, including physical education. Teachers thus are not subjected to any greater liability than parents who are liable to their children for wilful and wanton misconduct, but not for mere negligence. (*Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165, 347 N.E.2d 705.) Consequently, we must examine the facts of the present case to determine whether the jury's finding that the school district was guilty through McElroy of wilful and wanton misconduct in the supervision of Michelle's gym activities is against the manifest weight of the evidence.

The jury was given the concise definition of wilful and wanton misconduct contained in Illinois Pattern Jury Instructions (IPI Civil No. 14.01):

> "When I use the expression 'wilful and wanton conduct' I mean a course of action which * * * shows an utter indifference to or conscious disregard for * * * the safety of others."

The Illinois authorities have consistently held that wilful and wanton misconduct requires an act

> "* * * committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness, or carelessness when it could have been discovered by the exercise of ordinary care." (*Hocking v. Rehnquist* (1969), 44 Ill. 2d 196, 201, 254 N.E.2d 515, 518; see also *Montague v. School Board of the Thornton Fractional Township North High School District 215* (1978), 57 Ill. App. 3d 828, 373 N.E.2d 719; *McRoberts v. Maxwell* (1976), 40 Ill. App. 3d 766, 353 N.E.2d 159.)

The second example mentioned above illustrates the fact that the actor need not *subjectively* appreciate the high probability of serious physical harm which his conduct poses; it is sufficient if a reasonable man in his position would be brought to such a realization by the circumstances he knows or has reason to know of. Restatement (Second) of Torts §500, comments a, c, and g (1965); Prosser, Law of Torts, §34, at 185-86 (4th ed. 1971); see also *Turner v. Commonwealth Edison Co.* (1976), 35 Ill. App. 3d 331, 341 N.E.2d 488; *Bailey v. City of Decatur* (1977), 49 Ill. App. 3d 751, 364 N.E.2d 613.

■■ After due consideration we cannot say that the jury's finding of wilful and wanton misconduct was against the manifest weight of the evidence.

The record reflects that McElroy was aware that Michelle was obese, that she was untrained in the backward somersault maneuver and fearful of attempting it because of her size and that Michelle had experienced physical problems as a small child after attempting the maneuver. Moreover, McElroy was aware of the dangers presented to the performer by this maneuver. She admitted at trial that she knew prior to the accident that if a performer did not have sufficient arm strength to take the weight of the body and push it backwards that the weight would drop onto the person's neck.

We believe that considering these circumstances the jury could properly find that the instructor showed an utter indifference to the safety of Michelle when she directed her to practice the maneuver on her own, without personal instruction or a preliminary testing of her strength.

The likelihood of serious injuries to the neck under these conditions

was revealed by the expert testimony of Herman Biesterfeldt. Mr. Biesterfeldt is an assistant gymnastics coach at Southern Illinois University at Carbondale who has coached gymnastics summer camps for junior and senior high school students for ten years. He testified that weight is generally important in gymnastics, in that, if a performer is overweight, he is more likely to do damage to his body's connective tissue while performing. Weight is especially relevant to the execution of a backward somersault since one's ability to safely perform it depends upon whether the strength of his arms is sufficient to carry all or a substantial portion of the performer's weight. If one's strength is insufficient, the body weight is placed directly upon the neck and the performer is very likely to be seriously injured. Furthermore, one who has not previously executed the movement is usually quite unaware of how to press on the ground in an unfamiliar position in order to relieve the stress on his neck. For this reason, it is important that a novice be instructed and assisted by someone who is knowledgeable with respect to the skills involved in the maneuver and the dangers attending it. Fear itself presents a danger of neck injury in the performance of the backward somersault since it may cause a person to go too slowly and stop at the danger point, thus overloading the neck.

The school district's instructor chose to ignore the obvious dangers created by Michelle's fear, inexperience and excessive weight and to rely upon the brief demonstration of the backward somersault made by another student at the beginning of the gymnastics program to prepare her for the safe performance of this activity. A finding of wilful and wanton misconduct based on these facts is not against the manifest weight of the evidence.

For the foregoing reasons the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

KARNS and KUNCE, JJ., concur.