KATHLEEN A. POMREHN, Plaintiff-Appellant, *v.* CRETE-MONEE HIGH SCHOOL DISTRICT, Defendant-Appellee.

Third District   No. 81-153

⬛

Opinion filed November 5, 1981.

Anthony C. Srementi, of John L. Cifelli & Associates, Ltd., of Chicago Heights, for appellant.

D. Kendall Griffith and David P. Meyer, both of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellee.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Plaintiff Kathleen Pomrehn appeals from the entry of summary judgment in favor of defendant Crete-Monee High School District in her tort action against the school district. Count IV of Pomrehn's last amended complaint alleged that the school district was guilty of willful and wanton misconduct resulting in substantial personal injury to her. On this appeal, the plaintiff asserts that the trial court erred in entering summary judgment on the willful and wanton misconduct claim against the school district.

The facts as disclosed in the record are largely undisputed. In the spring of 1975, Kathleen Pomrehn was a member of Crete-Monee High School's girls varsity softball team. The high school team practiced, after school, at Crete Elementary School, the practice field there being less than a mile from the high school. Practices were scheduled to begin at 5:50 p.m. daily, during the week. The freshmen and sophomores were transported to the practice field by a school bus. The upperclassmen supplied their own transportation. Julie David, a teacher at the high

school, was the coach of the girls softball team. Under her duties as a teacher under the split shift attendance procedure at the school, she was required to remain at the school until 5:45 p.m. However, it was common for teachers to leave at 5:30 p.m., when classes ended for the students.

Prior to the date of the occurrence herein (being May 8, 1975), Julie David had left school at 5:30 p.m. and had arrived at the practice field around 5:35 p.m. She was usually there as the girls arrived from school. However, on May 8, she did not arrive until 5:45 p.m., a split second after plaintiff Pomrehn had been injured. According to the complaint and accompanying affidavits and depositions, the reason for her late arrival on May 8 was that the school principal, the previous day, had informed her to remain at school until the mandated 5:45 p.m. for teachers. According to the record, this action by the principal was taken for harassment purposes, in response to several discrimination suits filed by Coach David against the school district. In any event, on the day prior to the accident involving Pomrehn, the school principal had told Coach David to remain at school until the required 5:45 p.m. When Coach David had inquired of him, "What happens if one of my kids gets hurt?" his response was that it would not happen.

On May 8, plaintiff Pomrehn and another girl had arrived for practice around 5:30 p.m. Shortly thereafter, they left the practice area in the other girl's car, in order to drive to her home to get a coat hanger. The home was only a block from the practice field, and the coat hanger was needed to open the car of a friend who had locked the keys inside it. The two girls rode, in the car, to the house and got the hanger. In returning to the practice field, however, plaintiff Pomrehn rode on the outside of the auto, atop the trunk. When the driver of the auto attempted a left turn off the roadway onto the grassy area adjacent to the playing field, plaintiff Pomrehn was thrown off the back of the auto and received substantial head injuries. Julie David, the coach, arrived within seconds after the accident and attended to the situation. Pomrehn suffered a severe brain injury in the fall, with permanent effects. She incurred medical expenses of almost $25,000 and has had her earning capacity substantially reduced as a result of the accident.

A complaint was filed by plaintiff in January 1977 based upon the occurrence, and named as defendants were the driver of the auto and her father, the owner of the auto. Also named defendant was Crete-Monee High School District. The pertinent count against the high-school district alleged that the school district was guilty of willful and wanton misconduct in that the school principal had singled out Julie David, the coach, and required her to remain at school until 5:45 p.m. It was alleged that when this action was taken, the principal knew or should have known that his action increased the risk of injury at softball practice, since the

girls arrived beginning around 5:30 p.m. The misconduct alleged was not in the failure to supervise or schedule supervision. Rather, it was the intentional action in preventing the designated supervisor from being present at practice when the girls arrived prior to scheduled practice.

Based upon the record before him, the trial judge entered summary judgment in favor of the school district, finding that there were no issues of material fact and that the school district was entitled to judgment as a matter of law. (Ill. Rev. Stat. 1979, ch. 110, par. 57.) On the same date as the summary judgment order, the owner of the auto was stricken as a defendant by stipulation of the parties. The remaining negligence counts against the driver were scheduled for trial, but settlement was reached before such occurred. The present appeal was taken from the entry of summary judgment in favor of the school district on plaintiff's willful wanton misconduct claim.

■■ The sole issue before us is whether the trial court correctly entered summary judgment in favor of defendant school district. As we stated in *Coomer v. Chicago & North Western Transportation Co.* (1980), 91 Ill. App. 3d 17, 21, 414 N.E.2d 865:

> "The sole function of a reviewing court in reviewing the trial court's entry of a summary judgment is to determine whether the trial court correctly ruled that no genuine issue of material fact had been raised. [Citation.] If no such issue remained, then we must determine whether judgment was correctly entered for the moving party as a matter of law. [Citation.]"

The tort at issue in the instant case, willful and wanton misconduct, was recently reviewed in *Bernesak v. Catholic Bishop* (1980), 87 Ill. App. 3d 681, 686, 409 N.E.2d 287:

> " 'The Illinois Supreme Court has defined wilful and wanton conduct to be either an intentional injury or an act "committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care." [Citations.] In attempting to elucidate the concept contained in the words wilful and wanton conduct, our Supreme Court in *Brown v. Illinois Terminal Co.*, 319 Ill. 326, 150 N.E. 242, commented as follows:
>
>> "Such conduct [wilful and wanton] imports consciousness that an injury may probably result from the act done and a reckless disregard of the consequences. Ill-will is not a necessary element to establish the charge." [Citation.]' "

To sustain a claim of willful and wanton misconduct the plaintiff must

show an intentional act by defendant or an act taken, under the circumstances known, in reckless or conscious disregard of probable injurious consequences. It is essential that plaintiff allege and establish that when the defendant acted, or failed to act, he had knowledge, or should have had the knowledge under the circumstances, that his conduct posed a high probability of serious physical harm to others. See *Booker v. Chicago Board of Education* (1979), 75 Ill. App. 3d 381, 394 N.E.2d 452; *Landers v. School Dist. No. 203* (1978), 66 Ill. App. 3d 78, 82, 383 N.E.2d 645; *Clay v. Chicago Board of Education* (1974), 22 Ill. App. 3d 437, 318 N.E.2d 153.

■■ The question, as framed in the factual context of the instant case, is whether a genuine issue of fact was raised on the issue of whether the school district should have been aware that by preventing Coach David from arriving prior to 5:45 p.m., it was recklessly disregarding probable injurious consequences to the team members. We find that the evidence in the record before the trial court did not indicate any such reckless or conscious disregard of known dangers. There was no evidence of any special dangers presented during the time between the end of classes and the beginning of softball practice. There was no evidence of prior problems or hazards with the softball team members, or the practice area involved herein. Certainly, there is a risk of injury and a danger involved in almost any gathering of teenagers. Yet this general potential for danger with groups of children is not sufficient to support a charge of willful and wanton misconduct. (See *Mancha v. Field Museum of Natural History* (1972), 5 Ill. App. 3d 699, 283 N.E.2d 899.) No foreseeable, probable danger flowing from a lack of supervision between 5:30 p.m. and 5:45 p.m. was shown to have existed. Plaintiff's evidence was insufficient to raise a factual issue on whether there was any conscious disregard for the safety of the team members in the school district's action keeping Coach David at school until 5:45 p.m.

The cases cited by the defendant all involved a much greater and more specific probable danger resulting from defendants' actions in those cases. In *Landers v. School District No. 203* (1978), 66 Ill. App. 3d 78, 383 N.E.2d 645, a teacher ordered an overweight student to perform a backward somersault in gym class, despite a lack of instruction, the girl's fears expressed to the teacher, and her weight. Willful and wanton misconduct was found in the teacher's conduct in ignoring the obvious danger to the student. Similarly, in *Bernesak v. Catholic Bishop* (1980), 87 Ill. App. 3d 681, 409 N.E.2d 287, the known danger was clearly established. There, teachers stood passively by while students played a risky and dangerous game of "crack-the-whip" on the playground. (87 Ill. App. 3d 681, 685.) These cases, and other willful and wanton cases, present situations wherein conduct may be termed willful and wanton because it

is taken where a person is conscious, or should be conscious, of the risks and dangerous consequences of the acts or failure to act. In the instant case, no evidence was presented showing that the principal was aware of any probable danger from his action, nor was it shown that, under the circumstances, a reasonable man would have been aware that preventing supervision immediately after school would result in probable harm to the team members. No genuine issue of material fact was presented on the question.

The plaintiff seeks to raise the requisite factual issue on the knowledge question through Coach David's statement, taken after the accident, that she had heard that plaintiff Pomrehn "was used to being on the trunks of cars." Yet, there is no connection made at all between this second-hand knowledge on the part of Coach David and the situation after school with the softball team. And it is in the context of the existing and past situation at practice, with the dangers or hazards there, that the defendant's conduct must be judged. The evidence does not establish a connection. Furthermore, there is no indication in the record as to the basis for Coach David's knowledge or when she acquired it. The remark by the coach is not further developed by plaintiff's counsel, nor is a relationship shown between it and softball practice, or the team members.

The evidence in the record, viewed, as it must be, most favorably to the plaintiff, raises no material issue of fact on the question of the school district's conscious or reckless disregard for probable injurious consequences of its conduct. The undisputed evidence before the trial court is insufficient, as a matter of law, to support plaintiff's claim of willful and wanton misconduct on the part of the school district. The judgment of the Circuit Court of Will County is affirmed.

Affirmed.

SCOTT, P. J., and BARRY, J., concur.