RICHARD WEISS, Plaintiff-Appellee, *v.* COLLINSVILLE COMMUNITY UNIT SCHOOL DISTRICT NO. 10, MADISON COUNTY, Defendant-Appellant.

Fifth District   No. 82—652

Opinion filed September 30, 1983—Rehearing denied November 1, 1983.

Donald J. Dahlmann and James C. Cook, both of Walker & Williams, P.C., of Belleville, for appellant.

John H. Hustava and William W. Schooley, both of Law Office of William W. Schooley, of Granite City, for appellee.

JUSTICE KASSERMAN delivered the opinion of the court:

Defendant, Collinsville Community Unit School District. No. 10 (school district), appeals from a judgment of the circuit court of Madison County entered on a verdict in favor of plaintiff, Richard Weiss, in the amount of $62,420.65.

Plaintiff brought an action to recover damages for an alleged personal injury he suffered while playing softball in a physical education class conducted at Collinsville High School. The school district was found liable to plaintiff for wilful and wanton misconduct. On appeal, the school district argues that the trial court erred by not directing a verdict in its favor and that certain portions of plaintiff's closing argument were so prejudicial that it was deprived of a fair trial.

On November 30, 1981, the date this cause was set for trial, the trial court allowed plaintiff to file a third amended complaint, which included a count based upon wilful and wanton misconduct. In this count plaintiff alleged that the school district failed to instruct students regarding running the bases and sliding techniques used in softball, failed to maintain the first base line, failed to provide a secure first base, and failed to provide a safe field and that these omissions proximately caused plaintiff's injuries.

On December 1, 1981, the trial began. Robert Lochman, a student at Collinsville High School who was in plaintiff's physical education class, testified that on October 30, 1974, he and plaintiff were playing softball as part of the class curriculum. He said that he observed a cloud of dust and then saw plaintiff and another student, Mike Mancini, on the ground near first base. Mr. Lochman also testified that his physical education teacher, Frank Pitol, did not give their class any instructions on playing softball during his sophomore year. Mr. Lochman stated that he had played little league baseball for a number of years and did not believe he needed instruction on the fundamentals of softball. He stated that Mr. Pitol usually stayed on the softball field

when the students were playing and that Mr. Pitol was umpiring the game at the time plaintiff collided with Mike Mancini. Mr. Lochman described the field as a "regular softball diamond" and first base as a rubber mat about 12 inches square and about one-half to three-fourths of an inch thick.

Frank Pitol, the teacher of plaintiff's sophomore physical education class, testified that softball was taught progressively from junior high school through the sophomore year. Mr. Pitol stated that at the sophomore level he reviews the rules taught in freshman year. He said that prior to beginning play he inquires whether the students understand this review and if the students have any questions. According to Mr. Pitol, he prohibited stealing and bunting for safety reasons. Mr. Pitol testified that at the time of plaintiff's collision with Mike Mancini, he was umpiring the softball game near first base. Mr. Pitol could not recall instructing his students regarding sliding but did, along with other teachers, develop a curriculum guide for teaching skills needed for softball. Mr. Pitol believed that all his students were acquainted with the fundamentals of softball and were capable of participating in the game. He further testified that the softball field in the area of first base had no holes or crevices which might cause an injury.

Kenneth McAllister, a student who witnessed the collision between plaintiff and Mike Mancini, testified that the collision occurred when Mike Mancini slid into first base and knocked plaintiff down. Mr. McAllister said that Mr. Pitol's physical education class had played softball on previous occasions but were not given any instructions regarding the game nor was the class taught sliding techniques.

Lonny Giddins, another student who was an eyewitness to the collision between plaintiff and Mike Mancini, recalled that plaintiff was pitching during the softball game and that when plaintiff went to cover first base, the batter slid into first base, moved the base, and knocked plaintiff to the ground.

Plaintiff testified that his softball and baseball experience prior to his sophomore year in high school consisted of five years in little league beginning at age eight or nine and then various church teams his freshman year of high school. He testified that on October 30, 1974, during physical education class he pitched a softball to Mike Mancini, who hit a line drive between first and second base which bounced into the outfield. Plaintiff said that he ran to cover first base, that he was hit from behind by Mike Mancini while standing on first base, and that this collision apparently caused injury to his ankle and knee. He recalled that Mr. Pitol had umpired the game and that he

had played softball during physical education class once or twice before. Plaintiff also indicated that Mr. Pitol did not adequately teach him the rules of softball.

Kenneth Sheffield, who teaches physical education in St. Louis, testified that he had umpired, coached, and taught the sport of softball. He said he always began teaching softball with the presumption that the students were totally ignorant of the game. In response to two hypothetical questions, Mr. Sheffield stated that, in his opinion, plaintiff's injury could have been prevented if proper instructions had been given to the physical education class or if a canvas bag base fastened to the ground would have been used. He further stated that in his opinion it is the physical education teacher's duty to advise students of the dangers of sliding and that, in his own gym classes, he forbids sliding because he considers it very dangerous.

After the jury's verdict finding defendant liable for wilful and wanton misconduct, defendant filed a post-trial motion, in which defendant alleged, *inter alia*, that under the standard set forth in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513, it was entitled to a judgment as a matter of law. The trial court denied defendant's motion and defendant perfected this appeal. We find that the evidence, when viewed in its aspect most favorable to the plaintiff, so overwhelmingly favors defendant that no contrary verdict could stand and, therefore, reverse the trial court's judgment.

■■ ■ Absent proof of wilful and wanton misconduct, educators are immune from tort liability for personal injuries sustained by students during school activities. (*Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165, 172-73, 347 N.E.2d 705, 709.) To impose liability upon educators, a plaintiff must allege and establish that when the educators acted, or failed to act, it was with knowledge that such conduct posed a high probability of serious physical harm to others. (*Pomrehn v. Crete-Monee High School District* (1981), 101 Ill. App. 3d 331, 335, 427 N.E.2d 1387, 1390.) To constitute wilful and wanton conduct, the educator must be conscious, or should have been conscious, of the risks and dangerous consequences of the act or failure to act. *Pomrehn v. Crete-Monee High School District*; see *Montague v. School Board* (1978), 57 Ill. App. 3d 828, 831-32, 373 N.E.2d 719, 721-22.

■ While this arguably may be characterized a case of simple negligence, we conclude that the school district was not guilty of wilful and wanton misconduct. The evidence established that the school district maintained an established curriculum regarding the teaching

of softball in its physical education classes, that plaintiff's physical education teacher adequately supervised the softball games, and that the students in plaintiff's class, including plaintiff, had substantial experience playing baseball and softball. In this regard, there is no evidence that Mike Mancini received no instruction or lacked experience regarding softball other than plaintiff's inference that Mancini must have been without experience or instruction in the game, otherwise he would not have slid into first base. Moreover, the evidence fails to show any substantial defect in the field or equipment which would warrant the imposition of liability upon the school district based upon wilful and wanton misconduct. The condition of the field is not shown to have in any way been a cause of plaintiff's injury. While the unsecured rubber mat which was used as first base conceivably could have contributed to plaintiff's injury, and while a secured canvas bag may offer safety advantages, we cannot say that the use of the mat or the failure to employ a secured canvas bag amounted to wilful and wanton misconduct.

Plaintiff's reliance on this court's opinion in *Landers v. School District No. 203* (1978), 66 Ill. App. 3d 78, 383 N.E.2d 645, is misplaced. In that case, the student's physical education teacher ignored obvious dangers created by plaintiff's fear, inexperience, and excessive weight and ordered plaintiff to perform a difficult backward somersault. In the case now before us there is no showing of such utter indifference to plaintiff's safety.

Because we find no wilful and wanton misconduct present in this case, we need not consider defendant's alternative argument regarding statements made by plaintiff's counsel during closing argument.

For the foregoing reasons, the judgment of the circuit court of Madison County is reversed.

Reversed.

JONES and KARNS, JJ., concur.