2021 IL App (2d) 200039-U
No. 2-20-0039
Order filed January 25, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| CINDI MATHIAS, Individually and as Mother and Next Friend of T.M., a Minor, | ) ) | Appeal from the Circuit Court of Winnebago County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 19-L-97 |
| | ) | |
| WINNEBAGO COMMUNITY UNIT SCHOOL DISTRICT 323 and BRENT THOMPSON, | ) ) ) ) | Honorable Lisa Renae Fabiano, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Hutchinson and Birkett concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court did not err in dismissing plaintiff's willful and wanton action for failure to state a claim, but it abused its discretion in dismissing the complaint with prejudice.

¶ 2   Plaintiff, Cindi Mathias, individually and as mother and next friend of T.M., her minor son, sued defendants, Winnebago Community Unit School District 323 and Brent Thompson, T.M.'s instructor, alleging T.M. sustained injury to his wrist while playing a game in Thompson's physical education class and further alleging that Thompson's conduct was willful and wanton where he

mandated that students play in the school gymnasium near an area that was bounded by an unpadded concrete wall. Defendants moved to dismiss plaintiff's complaint for failure to state a claim (735 ILCS 5/2-615 (West 2018)) and on the basis of defendants' tort immunity (735 ILCS 2-619(a)(9) (West 2018)). The trial court granted defendants' motion based on plaintiff's failure to state a claim and dismissed the complaint, with prejudice. Plaintiff appeals, arguing that dismissal was unwarranted and, alternatively, that the dismissal should have been without prejudice. We affirm the dismissal, but conclude that the complaint should have been dismissed without prejudice; accordingly, we remand the cause.

¶ 3                          I. BACKGROUND

¶ 4     On March 26, 2019, plaintiff filed her two-count complaint, alleging willful and wanton conduct and seeking judgment against the district and family expenses. She alleged as follows.

¶ 5     Plaintiff's son, T.M., was a tenth-grade student at Winnebago High School, which was operated by defendant District. Thompson was the sole supervisor and instructor of T.M.'s physical education class on April 11, 2018. That day, during gym class in the school gymnasium, the students were instructed to play scramble ball, the object of which was to run to a "safe zone" prior to being struck with the ball by an opposing player. Thompson designated an area about two to three feet wide as the "safe zone," "being the area between two imaginary parallel lines: one running along the basketball court's orange border (extending in both directions to a set of bleachers which face each other); the other being a concrete wall sitting perpendicular to both sets of bleachers."

¶ 6     Plaintiff further alleged that Thompson knew or should have known that the students playing the game as instructed would be required to run headlong toward a concrete wall in an effort to make it into the safe zone before being struck by the ball. He also knew or should have

known that some students would not be able to stop themselves within the safe zone and, instead, would run directly into the concrete wall. Thompson knew or should have known that large portions of the concrete wall did not have padding and that any student running into it would have nothing to protect him or her from injury in those areas of the wall and could sustain serious injury if he or she was unable to stop within the narrow confines of the safe zone.

¶ 7　　That day, T.M. was playing the game as instructed. He kicked the ball to an opponent and sprinted to the other end of the court to attempt to reach the safe zone before getting struck by the ball. However, he was unable to stop himself within the safe zone and ran into an unpadded section of the concrete wall, thereby, sustaining "serious injury to his right wrist."

¶ 8　　Thompson had a duty to refrain from willful and wanton conduct in the supervision of his students, including T.M. However, with utter indifference and conscious disregard for T.M.'s safety, he:

"was willful and wanton in that he knowingly and intentionally or with reckless disregard acted in one or more of the following ways: [(1)] Thompson was aware of the risk of injury and consciously disregarded and/or was utterly indifferent to said risk by mandating that the class engaged in scramble ball with a narrow strip of floor designated as the 'safe zone,' when that zone was bounded by an unpadded, concrete wall; [(2)] Thompson, during his supervision, knew or should have known that the physical education students[,] including T.M.[,] were not in a position to refuse to participate in the game without being subject to disciplinary action by the school; [(3)] Thompson, during his direct supervision, became aware that students were running at full speed toward the concrete wall bordering the narrow confines of the safe zone, knew that this posed an unreasonable risk of harm, yet mandated that the scramble ball game continue; [and (4)] Thompson, during his

supervision[,] knew or should have known by observation or experience that students may not be able to stop themselves within the narrow confines of the safe zone, yet mandated that the scramble ball game continue without modification of the area designated as the safe zone."

¶ 9       Plaintiff further alleged that, as a direct and proximate result of one or more of these willful and wanton acts and/or omissions of defendants, T.M. "suffered and will continue to suffer injuries of a personal and pecuniary nature." She sought judgment against defendants in excess of $50,000 and, in a second count, sought family expenses (for medical care and services for T.M. "in the hope of becoming healed and cured of his injuries") pursuant to "the so-called Family Expense statute," providing no citation to such statute.

¶ 10      On May 9, 2019, defendants filed a combined motion to dismiss plaintiff's complaint (735 ILCS 5/2-619.1 (West 2018)). With respect to their section 2-615 motion, which is relevant to this appeal, they argued that the complaint failed to plead willful and wanton conduct and that it failed to sufficiently plead a negligence claim. Specifically, they asserted that the complaint contained bare legal conclusions with no supporting facts (showing willful and wanton conduct) and failed to identify any duty the District owed plaintiff, how it was breached, or how it proximately caused T.M.'s injury.

¶ 11      At an October 9, 2019, hearing on defendants' motion to dismiss, plaintiff's counsel noted that T.M. had sustained permanent injury to his dominant hand, which was fused after two surgeries. Counsel argued that it was sufficient that plaintiff pleaded ultimate facts (what the teacher knew, the harm that he knew could result, and that this was probable) and that she did not have to plead evidentiary facts (which would be apparent after discovery).

¶ 12    At the conclusion of arguments, the court asked plaintiff's counsel if he sought "an opportunity to plead again." Counsel responded, "Oh, absolutely." The court continued, "or would there be additional facts that you might be able to plead." Counsel responded:

"—at this point, I can't. There should be discovery. There should be discovery. The vast majority of the case law on this issue are motions for summary judgment or [ ] directed verdicts. They are not—they don't come at the pleading stage the vast majority. Because the Court allows the plaintiff to conduct discovery so that they can make their pleadings more particular in advance at trial. But at this point, I, I put everything in this complaint that we know."

¶ 13    On December 18, 2019, the trial court denied defendants' section 2-619 motion to dismiss and granted their section 2-615 motion. It also dismissed plaintiff's complaint, with prejudice. As to the 2-615 motion, the court noted that, to plead willful and wanton conduct, the complaint needed to adequately plead that the activity is generally associated with a risk of serious injury such that a defendant should know that the risk of serious injury is high. Plaintiff failed to do so, in the court's view, where the complaint contained no allegations that playing scramble ball in a gymnasium is an activity generally associated with a risk of serious injury. Also, plaintiff did not plead there was evidence of a prior injury, which would have been an alternative avenue to meet the pleading standard. Plaintiff appeals.

¶ 14                                    II. ANALYSIS

¶ 15    Plaintiff argues that the trial court erred in dismissing her complaint for failing to state a claim for willful and wanton conduct. Alternatively, she contends that the trial court erred in dismissing the complaint with prejudice and not allowing her to re-plead. For the following

reasons, we reject plaintiff's argument that she stated a claim, but we agree that her complaint should have been dismissed without prejudice.

¶ 16                                A. Failure to State a Claim

¶ 17    Plaintiff's complaint was dismissed pursuant to section 2-615 of the Code of Civil Procedure (Code). 735 ILCS 5/2-615 (West 2018). A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint, based on defects apparent on its face. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). In reviewing the sufficiency of the complaint, we take all well-pleaded facts as true and construe the allegations in the complaint in the light most favorable to the plaintiff. *Henderson Square Condominium Ass'n v. LAB Townhomes, LLC*, 2015 IL 118139, ¶ 61. "[A] cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Marshall*, 222 Ill. 2d at 429. We review *de novo* an order granting a section 2-615 motion to dismiss. *Henderson Square*, 2015 IL 118139, ¶ 61.

¶ 18    Illinois is a fact-pleading jurisdiction. *Weiss v. Waterhouse Securities, Inc.*, 208 Ill. 2d 439, 451 (2004). A complaint will be deemed sufficient if the allegations contained therein "reasonably inform the defendants by factually setting forth the elements necessary to state a cause of action." *People ex rel. Scott v. College Hills Corp.*, 91 Ill. 2d 138, 145 (1982). Although pleadings are to be liberally construed, with the aim of doing substantial justice between the parties, this rule does not relieve a plaintiff from including sufficient factual averments in his or her complaint. *People ex rel. Kucharski v. Loop Mortgage Co.*, 43 Ill. 2d 150, 152 (1969). While the plaintiff is not required to set forth evidence in his or her complaint, the plaintiff must allege facts sufficient to bring a claim within a legally recognized cause of action, not simply conclusions. *Marshall*, 222 Ill. 2d at 429. A pleading that merely paraphrases the elements of a cause of action in conclusory

terms is insufficient. *Welsh v. Commonwealth Edison Co.*, 306 Ill. App. 3d 148, 155 (1999). On the other hand, a plaintiff need not set out his or her evidence in the complaint. A fact is well pleaded if a plaintiff has clearly set out the ultimate fact he or she intends to prove. *Landers-Scelfo v. Corporate Office Systems, Inc.*, 356 Ill. App. 3d 1060, 1065 (2005); see also *Blevins v. Marcheschi*, 2018 IL App (2d) 170340, ¶ 29 ("Only ultimate facts to be proved should be alleged and not the evidentiary facts tending to prove such ultimate facts.").

¶ 19    "The law in Illinois with respect to pleading 'ultimate' facts rather than 'conclusions of law' is not clear. The same allegation may in one context be a proper allegation of ultimate fact, while in another context, where from a pragmatic viewpoint some of the words do not give sufficient information to an opponent of the character of evidence to be introduced or of the issues to be tried, the allegation may be deemed to be an allegation of a legal conclusion." *J. Eck & Sons, Inc. v. Reuben H. Donnelley Corp.*, 213 Ill. App. 3d 510, 514 (1991); see also *Woodson v. North Chicago Community School District No. 64*, 187 Ill. App. 3d 168, 172 (1989) ("The drafter of a complaint must strike a balance between pleading too little or too much factual detail; however, distinguishing between conclusions, ultimate facts, and evidentiary facts is difficult because the classification of an allegation depends on the context of a particular case.").

¶ 20    Illustrating this point is the case law concerning the pleading of the defendant's knowledge. It appears that most cases hold or assume that "[t]he plaintiff need not plead the evidentiary facts that he [or she] will use to prove the defendant's knowledge." *Id.*; see also *Ward v. Community Unit School District 220*, 243 Ill. App. 3d 968, 974 (1993) ("[a] statement of a defendant's knowledge is an allegation of ultimate fact and not a conclusion"; a plaintiff "need not plead the evidentiary facts he [or she] will use to prove [the] defendant's knowledge") (citing *Doner v. Phoenix Joint Stock Land Bank of Kansas City*, 381 Ill. 106, 115 (1943) ("The allegation that each

of the defendants, at and before the time they acquired their aforesaid purported conveyances, or paid the consideration, if any, for the execution of the same, knew of the rights of the plaintiff in the premises and were charged with notice of said rights, was an allegation of ultimate fact and not a conclusion, as argued by appellee."); see also *Manuel v. Red Hill Community Unit School District No. 10 Board of Education*, 324 Ill. App. 3d 279, 290 (2001) (rejecting proposition that a plaintiff must allege how a defendant became knowledgeable about condition of premises; citing cases holding that statement of a defendant's knowledge is allegation of an ultimate fact and not a conclusion); *Bowers v. Du Page Regional Board of School Trustees District No. 4*, 183 Ill. App. 3d 367, 380 (1989). However, there is some case law that states otherwise. See, *e.g.*, *Mitchell v. Norman James Construction Co., Inc.*, 291 Ill. App. 3d 927, 935 (1997) ("conclusory allegations that a defendant 'knew or should have known' of a condition or an event, without allegations of specific facts as to how or why a defendant knew or should have known, are insufficient to state a claim for negligence."); *Washington v. Chicago Board of Education*, 204 Ill. App. 3d 1091, 1094 (1990) (allegation that school board knew or should have known of dangerous condition is conclusory); *Majewski v. Chicago Park District*, 177 Ill. App. 3d 337, 341 (1988) (willful and wanton conduct insufficiently pleaded, where the plaintiff failed to plead facts stating why the defendant knew or should have known about dangerous condition—"facts that demonstrate a conscious disregard for the safety of others").

¶ 21    With this background in mind, we note that "[s]ection 24-24 of the School Code confers on teachers *in loco parentis* status in all matters relating to the supervision of students in school activities. This court has interpreted section 24-24 to immunize ordinary negligence, but not to immunize willful and wanton misconduct." *Henrich v. Libertyville High School*, 186 Ill. 2d 298, 388-89 (1998) (further noting that this "interpretation is keyed to the rule that parents are not liable

to their children for ordinary negligence, but are liable for willful and wanton misconduct."). Similarly, section 3-108(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) provides in pertinent part that: "neither a local public entity nor a public employee who undertakes to supervise an activity on or the use of any public property is liable for an injury unless the local public entity or public employee is guilty of willful and wanton conduct in its supervision proximately causing such injury." 745 ILCS 10/3-108(a) (West 2018). Further, a " '[l]ocal public entity' includes a *** school district." 745 ILCS 10/1-206 (West 2018). Section 2-109 of the Tort Immunity Act, in turn, provides that "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109 (West 2018).

¶ 22    Plaintiff brought a personal injury action, alleging that Thompson's willful and wanton conduct proximately caused injury to her son. No separate and distinct tort exists for willful and wanton conduct. *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 235 (2010). Rather, willful and wanton conduct is regarded as an aggravated form of negligence. *Id.* In order to recover damages based on willful and wanton conduct, a plaintiff must plead and prove the basic elements of a negligence claim—that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was a proximate cause of the plaintiff's injury. *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 225 (2010). In addition, a plaintiff must allege either a deliberate intention to harm or a conscious disregard for the plaintiff's welfare. *Doe v. Chicago Board of Education*, 213 Ill. 2d 19, 28 (2004). Section 1-210 of the Tort Immunity Act defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property. This definition shall apply in any case where a 'willful and wanton'

exception is incorporated into any immunity under this Act." 745 ILCS 10/1-210 (West 2018). "Willful and wanton conduct differs from mere negligence in that it 'requires a conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable [person].' " *Torres v. Peoria Park District*, 2020 IL App (3d) 190248, ¶ 24 (quoting *Burke v. 12 Rothschild's Liquor Mart, Inc.*, 148 Ill. 2d 429, 449 (1992) (quoting Restatement (Second) Torts § 500 cmt. g, at 590 (1965))). It "contemplates more than mere inadvertence, incompetence, or unskillfulness." *Leja v. Community Unit School District 300*, 2012 IL App (2d) 120156, ¶ 11; see also *Brown v. Illinois Terminal Co.*, 319 Ill. 326, 331 (1925) ("Such conduct (wilful and wanton) imports consciousness that an injury may probably result from the act done and reckless disregard of the consequences."); *Oravek v. Community School District 146*, 264 Ill. App. 3d 895, 899-900 (1994) ("Wil[l]ful and wanton misconduct goes far beyond mere inadvertence, which may constitute ordinary negligence, because it requires a conscious disregard for the safety of others"; it "should shock the conscience"); *Pomrehn v. Crete-Monee High School District*, 101 Ill. App. 3d 331, 335 (1981) ("It is essential that plaintiff allege and establish that when the defendant acted, or failed to act, [the defendant] had knowledge, or should have had the knowledge under the circumstances, that his [or her] conduct posed a high probability of serious physical harm to others."). Although the issue of whether a defendant's actions amounted to willful and wanton conduct is typically a question of fact for the jury to determine, a court can decide the issue as a matter of law if a plaintiff's allegations state a cause of action. *Leja*, 2012 IL App (2d)120156, ¶ 11.

¶ 23    Here, in dismissing the complaint, the trial court relied on *Barr v. Cunningham*, 2017 IL 120751, which, unlike this case, involved a directed verdict. In *Barr*, after he sustained an eye injury in gym class, a high school student sued his school district and gym teacher, alleging willful

and wanton conduct for failing to provide protective eyewear during a floor hockey game. The soft safety ball used in the game had bounced off the plaintiff's plastic hockey stick and hit him in the eye, causing injury and permanent dilation of his pupil. The plaintiff alleged that the gym teacher was willful and wanton for failing to require the students to wear protective eyewear while playing the game. After trial, the trial court found that the plaintiff failed to present evidence of any willful and wanton conduct and entered a directed verdict for the defendants, rejected the defendants' claims of discretionary immunity under section 2-201 of the Tort Immunity Act, but found they were immune under section 3-108 of that statute.

¶ 24    The supreme court upheld the trial court's ruling on the issue of supervisory immunity. *Id.* ¶¶ 25, 27. The court first rejected the plaintiff's argument that the gym teacher showed conscious disregard for her students' safety when she did not require safety goggles for the game. *Id.* ¶ 17. The gym teacher testified that she determined that goggles were not necessary because the students were using plastic sticks and soft safety balls and because she enforced certain safety rules. Thus, she took some precautions, although they were insufficient. *Id.* The court noted that this could not amount to willful and wanton conduct. *Id.* ¶ 18 (noting that case law holds that school employees who exercise some precautions to protect students from injury are not guilty of willful and wanton conduct, even where those precautions are insufficient). The supreme court next rejected the plaintiff's argument that the gym teacher was aware that the ball could fly in the air and hit the students in the eye, which would necessitate a finding of willful and wanton conduct. *Id.* ¶ 19. The court noted that, in the absence of evidence of prior injuries (such as in the case before it), courts require some evidence that the activity is generally associated with a risk of serious injuries. *Id.* ¶¶ 21-23 (discussing *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 246 (2007) (reversing summary judgment for the defendant, where there was a material factual

question of willful and wanton conduct; student suffered spinal cord injury while using a mini-trampoline during an extracurricular program; evidence showed it is well known that use of trampoline is associated with risk of serious injury from improperly-executed somersaults; program not supervised by properly-trained instructor or taught in proper manner and with trained spotters and safety equipment), and *Hadley v. Witt Unit School District 66*, 123 Ill. App. 3d 19, 20, 23 (1984) (reversing summary judgment for the defendants; instead of working on their assignment in an industrial-arts class, students, including the plaintiff, attempted to pound a piece of scrap metal through a hole in an anvil, and a metal chip flew into the plaintiff's eye, causing trauma and visual impairment; the teacher had not told them to stop or put on safety goggles; held that the teacher's failure to act after observing the students engaging in a "dangerous activity" could constitute willful and wanton conduct, and issue should have gone to the jury))[1]. In *Barr*, the supreme court held that, in contrast to *Murray* and *Hadley*, there was no evidence in the case before it that floor hockey played with plastic hockey sticks and "squishy" balls was "an obviously dangerous activity" that called for the use of protective eyewear by the players. *Id.* ¶ 23. Thus, viewing the evidence at trial in the light most favorable to the plaintiff, the plaintiff failed to show that the defendants knew or should have known that the plaintiff could be seriously injured from

---

[1] Although the procedural posture of the case was an appeal from the grant of partial summary judgment for the defendants, the *Hadley* court also stated that the plaintiff had sufficiently stated a cause of action for willful and wanton misconduct, specifically, by alleging that the teacher observed the students' hammering of the metal, knew or should have known that hammered metal could splinter, failed to instruct the students to wear goggles, and failed to act in the face of a dangerous situation. *Id.* at 23.

playing the game without safety goggles and failed to establish a claim for willful and wanton conduct. *Id.* ¶¶ 23-24.

¶ 25    Here, the trial court found that "merely being aware of a risk of injury is not sufficient to establish willful and wanton conduct." It read *Barr* to require that a defendant must be aware of a high probability of serious injury, which a plaintiff must show by presenting evidence of either a prior injury or that the activity is inherently risky. Plaintiff, the trial court found, did not allege any prior injuries resulting from the students playing scramble ball and it further found that no facts alleged that playing scramble ball in a gymnasium is an activity that is generally associated with a risk of serious injury. Scramble ball, the court determined, "is not an obviously dangerous activity like trampolining and, instead, is a more similar activity to floor hockey."

¶ 26    Plaintiff maintains that she sufficiently pleaded that Thompson consciously disregarded or was utterly indifferent to T.M.'s safety and, as a proximate result, the boy was severely injured. (She does not maintain that she pleaded that defendants intended to cause harm, and she does not assert that there was a dangerous condition on the school property.) Plaintiff argues that the complaint allegations were not conclusory and notes that "[a] statement of a defendant's knowledge is an allegation of ultimate fact and not a conclusion." *Ward*, 243 Ill. App. 3d at 974. She did not allege a prior injury, she notes, because a pleader is not required to set forth the evidence to support the alleged ultimate facts. The complaint, plaintiff notes, alleges that defendant knew that asking children to run headlong into an unpadded concrete wall posed an unreasonable risk of harm of serious injury, yet mandated that they do it anyway. *How* defendant acquired that knowledge, *e.g.*, such as from witnessing prior injuries or because the game is inherently risky, is immaterial at the pleading stage. Plaintiff contends that the ultimate fact— defendant's knowledge—was sufficiently pleaded and must be accepted for purposes of a section

2-615 motion. She contends that the trial court's dismissal on the basis that she did not allege evidence to support the allegations of ultimate fact was erroneous. Plaintiff urges that she cannot reasonably be expected to plead evidence at the outset of the case before engaging in any discovery. She notes that defendants filed their motion at the outset of the case and attacked her complaint before entering their appearances. Plaintiff contends that, even without evidence of any prior injuries or that scramble ball is inherently risky, the complaint should not have been dismissed, because it alleged that this defendant knew that he was asking children to run headlong into an unpadded concrete wall, at a time he knew (through his observation or experience) that some of them would not be able to stop themselves, knew some of them would run into the wall, knowing that they could sustain serious injury, and knowing that this posed an unreasonable risk of harm. Accepting these allegations as true, a jury could award relief. Plaintiff maintains that the evidence that will ultimately establish defendant's knowledge is yet to be presented. At the pleading stage, only the ultimate facts need to be alleged, not the evidentiary facts tending to prove such ultimate facts. *Barr*, upon which the trial court relied, is distinguishable, she argues, because the court there was not required to accept well-pleaded facts as it must do in this case. The trial court, she argues, erred in requiring a recitation of evidentiary facts that will be used to prove such knowledge at trial. Whether defendants had knowledge of the dangerousness of the activity because of a prior injury, because the game is associated with a high risk of injury, or for any other reason is immaterial at the pleading stage. She asserts that, accepting as true all well-pleaded facts and reasonable inferences that may be drawn from them, the complaint stated a cause of action.

¶ 27    Plaintiff also notes that the question of whether conduct amounts to willful and wanton conduct is generally a fact question for the jury to assess. She argues that the trial court appeared to engage in a summary-judgment-type analysis, not one under section 2-615, when it determined

that scramble ball is not an obviously dangerous activity like trampolining. It was improper to consider the merits of the case here, she asserts. Where the merits of a case are dependent on the facts, a motion for summary judgment is the procedure that must be employed, not a motion to dismiss. See *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 26 (a summary-judgment motion is the proper vehicle to address a complaint's factual allegations).

¶ 28    Plaintiff further argues that, unlike *Barr*, the trial court dismissed the action at the pleading stage before she was permitted to engage in discovery to discover facts or present any evidence. Also, her son was injured by an unpadded concrete wall, not a squishy safety ball as in *Barr*. She maintains that injury from the latter is unlikely, but injury from the former is natural and probable. The trial court, she argues, disposed of the case before any evidence could be presented or gathered through discovery, and it based its decision solely on the allegations of defendant's knowledge. An allegation of a defendant's knowledge, she again notes, is an allegation of ultimate fact and not a conclusion. A plaintiff need not plead the evidentiary facts that she will use to prove the defendant's knowledge. It was error, plaintiff argues, for the trial court to require a recitation of the evidentiary facts that will be used to provide such knowledge at trial.

¶ 29    Defendants respond that, at best, plaintiff pleaded ordinary negligence from which they are immunized from liability. They argue that, to plead willful and wanton conduct, plaintiff must allege facts showing that defendants: (1) were aware of similar prior injuries; (2) knew that scramble ball posed a high probability of serious physical harm to others;[2] or (3) that the activity

---

[2] Plaintiff takes issue with defendant's definition of willful and wanton conduct as requiring a *high probability* of serious physical harm to others, arguing that the standard is that there be "some evidence that the activity is generally associated with a risk of serious injury." *Barr*, 2017

was obviously dangerous. Plaintiff's complaint fell short of these pleading standards, they contend. Defendants maintain that plaintiff's allegations are conclusory and insufficiently specific. They assert that simply alleging that a student could be injured, that there was a serious risk of injury, and that the risk was unreasonable is insufficient to transform an ordinary negligence claim into a willful-and-wanton claim. Accepting plaintiff's argument, they argue, would allow any gym class injury to survive a motion to dismiss because there is always a risk that students may fall, trip, run into a wall, or be injured by a ball or other piece of equipment.

¶ 30   Each case presents unique facts (*Murray*, 224 Ill. 2d at 238), and case law involving school physical activities with similar allegations has come to different conclusions concerning the sufficiency of the plaintiffs' willful-and-wanton claims. Compare *Bowers v. Du Page County Regional Board of School Trustees District No. 4*, 183 Ill. App. 3d 367, 380 (1989) (reversing 2-615 dismissal of willful-and-wanton count, where minor fell from a rope ladder she was required to climb during gym class; allegations included that, with reckless disregard, the defendants failed to provide adequate supervision, provided unsafe and inadequate matting under the ladder, failed to properly instruct students in how to climb ladder, failed to ascertain whether minor was able to perform the task, and failed to ensure that other students did not hinder or endanger the minor while she climbed the rope; allegations also included that the defendants knew or should have known that use of a rope ladder without proper supervision and equipment would result in injury

---

IL 120751, ¶ 21. She contends that the supreme court did not mention a "high probability standard" in *Barr*. We reject the premise of plaintiff's argument. The concepts are essentially the same: a *high probability* of serious injury means that the activity is *generally associated* with a risk of serious injury.

to the plaintiff), with *Tijerina v. Evans*, 150 Ill. App. 3d 288, 292 (1986) (affirming 2-615 dismissal for failure to properly allege willful and wanton conduct, where the plaintiff student sustained injuries during physical education class in school gym while participating in whiffle ball game under teacher's supervision; complaint alleged that student sustained injury when he ran into first row of bleachers, which were pulled out in locked position; held that allegations that game was played within close confines of gym and the "bare assertion" that defendants knew or should have known of danger of injury did not set forth facts as to specific circumstances that made the activity dangerous or more dangerous than other athletic activities normally conducted in a school gym; further holding that allegation that first row of bleachers was open in a locked position, without more facts specifying how this created a danger that proximately caused the student's injury, "does not show a factual basis which would support a claim of willful and wanton misconduct"; also, there were no specific allegations that showed why instructor knew or should have known of impending danger, where bleachers were located in relation to the game, or what specific conduct in the game made the danger "imminent" so as to constitute reckless disregard for the safety of others).

¶ 31    In her complaint, plaintiff alleged that Thompson had a duty to refrain from willful and wanton conduct in the supervision of his students, including T.M.  However, Thompson, with utter indifference and conscious disregard for T.M.'s safety, designated a safety zone that was two to three feet wide and bounded on one side by a concrete wall.  Thompson knew that the concrete wall was unpadded, knew that students would be required to run headlong toward the unpadded concrete wall, knew or should have known, by observation or experience, that some students would not be able to stop themselves within the narrow confines of the safety zone, and knew that some students would run into the concrete wall.  Further, plaintiff alleged that Thompson knew or should

have known that students running into the unpadded concrete wall could sustain serious injury, knew that, during his direct supervision, students were running at full speed toward the concrete wall bordering the narrow confines of the safety zone, and knew that having the children running at full speed toward the unpadded concrete wall posed an unreasonable risk of harm, yet mandated that the game continue. As a direct and proximate result of one or more of these willful and wanton acts, T.M. suffered serious injury to his right wrist.

¶ 32    We conclude that, even assuming plaintiff's allegations concerning Thompson's knowledge are not conclusory (as most case law appears to assume or hold), the trial court did not err in dismissing plaintiff's complaint for failure to state a claim for willful and wanton conduct. To be clear, plaintiff did not allege, nor does she argue, that the unpadded area of the concrete gym wall was a defect. Nor did she allege facts from which it can be inferred that the potential risk of serious injury during scramble ball are the same as the highly dangerous activities the *Barr* court highlighted in the case law. Thus, in the absence of allegations of prior injury or an inherently risky activity, we are left to assess whether plaintiff adequately pleaded that defendant's conduct of the scramble ball game showed "an utter indifference to or conscious disregard for the safety of others" (745 ILCS 10/1-210 (West 2018)), or that Thompson "should have had the knowledge under the circumstances, that his conduct posed a high probability of serious physical harm to others" (*Pomrehn*, 101 Ill. App. 3d at 335). Although the complaint arguably stated a claim for negligence, its properly-pleaded allegations do not plead willful and wanton conduct. Each case is unique, but case law provides some assistance, and we believe that this case is more like *Tijerina* than *Bowers*. As in *Tijerina*, where the court affirmed the dismissal of the plaintiff's complaint, plaintiff here did not set forth facts as to specific circumstances that made the scramble ball game dangerous or more dangerous than other athletic activities normally conducted in a school gym.

*Tijerina*, 150 Ill. App. 3d at 292. In *Bowers*, in contrast, where the court reversed the dismissal of the plaintiff's complaint, the allegations were far more detailed than those here. For example, the *Bowers* complaint alleged that, with reckless disregard, defendants provided inadequate supervision, unsafe and inadequate equipment, failed to instruct the students in the proper manner to perform the activities, failed to ascertain whether they were able to perform the task, and failed to ensure that other students did not hinder or endanger the plaintiff while she was performing the required task. *Bowers*, 183 Ill. App. 3d at 370-71, 380. In this case, in contrast, plaintiff pleaded that Thompson knew that the concrete wall was unpadded, knew that students would be required to run headlong toward the unpadded concrete wall, knew or should have known, by observation or experience, that some students would not be able to stop themselves within the narrow confines of the safety zone, and knew that some students would run into the concrete wall. Nowhere did she allege, for example, that Thompson failed to warn the students of the fact that serious injury could occur if they did not stop running before reaching the concrete wall, when he knew or should have known that the students would not be aware of that danger. Nor did plaintiff allege that Thompson failed to ascertain whether the student could play the game without hitting the unpadded area of the wall. See *id.* at 370 (allegations included that defendant failed to instruct students in proper manner to perform activity and failed to ascertain whether they were able to perform it). In sum, although the allegations—that a teacher mandated that a game be played where students run toward a concrete wall at full speed—may allege negligence, we cannot say that the allegations here show an utter indifference to or conscious disregard for the safety of others or that Thompson's conduct posed a high probability of serious physical harm to the students so as to constitute willful and wanton conduct.

¶ 33     Finally, we note that plaintiff argues in her reply brief that she did allege prior knowledge of impending danger and no action taken to avoid it.  She points to her allegations that defendant knew through his observation and experience that some students would not be able to stop themselves from running into the unpadded concrete wall, that any such students could sustain serious injury, and yet mandated that the game continue without modification of the designated safe zone.  We reject this argument.  To the extent she is attempting to raise a prior injury, this fails because the allegations do not in any way make such an assertion.  Rather, they refer to the knowledge of the risks inherent in running toward a concrete wall.

¶ 34     In summary, the trial court did not err in granting defendants' motion to dismiss plaintiff's complaint for failure to state a claim for willful and wanton conduct.

¶ 35                              B. Dismissal with Prejudice

¶ 36     Alternatively, plaintiff argues that, if this court affirms the dismiss of her complaint, the trial court abused its discretion in dismissing the complaint with prejudice.  We agree.

¶ 37     We review for an abuse of discretion the trial court's refusal to allow the filing of an amended pleading.  *City of Elgin v. County of Cook*, 169 Ill. 2d 53, 71-72 (1995).  A trial court abuses its discretion where no reasonable person would take the court's view.  *Gauger v. Hendle*, 2011 IL App (2d) 100316, ¶ 98.

¶ 38     Here, plaintiff contends that the trial court erroneously deprived her of an opportunity to amend.  She maintains that this was a drastic measure taken at the outset of the case and before any discovery.

¶ 39     In response, defendants note that plaintiff's counsel informed the court that, if given the opportunity to file an amended complaint, he would not be able to plead any additional facts in support of the claim.  They also note that counsel did not offer an amended pleading.  Since

plaintiff could not cure her defective pleading, defendants argue, and did not present any proposed amendment to cure the pleading deficiencies, the trial court's dismissal with prejudice was not an abuse of discretion.  Further, defendants contend that, to the extent plaintiff argues that she should have been given the opportunity to engage in discovery prior to the dismissal of her complaint, this argument fails because discovery cannot be used as a fishing expedition for speculative claims.

¶ 40    Section 2-616(a) of the Code governs the amendment of pleadings and provides that "[a]t any time before final judgment amendments may be allowed on just and reasonable terms *** changing the cause of action or defense or adding new causes of action or defenses, and in any matter, either of form or substance, in any process, pleading, bill of particulars or proceedings, which may enable the plaintiff to sustain the claim for which it was intended to be brought or the defendant to make a defense or assert a cross claim."   735 ILCS 5/2-616(a) (West 2018).  Although, generally, it is within the trial court's discretion whether to dismiss, with prejudice, a complaint pursuant to section 2-615 or 2-619, (*Gajda v. Steel Solutions Firm, Inc.*, 2015 IL App (1st) 142219, ¶ 31), that discretion should be exercised liberally in favor of amendment (*Hartshorn v. State Farm Insurance Co.*, 361 Ill. App. 3d 731, 735 (2005)).  Liberally allowing amendment serves the primary goal of our legal system—providing litigants with the opportunity to fully and fairly present their causes of action.  *Gajda*, 2015 IL App (1st) 142219, ¶ 31.  However, the right to amend pleadings is not unlimited, and there is no absolute right to amend a complaint under the liberal policy regarding amendments.  *United Conveyor Corp. v. Allstate Insurance Co.*, 2017 IL App (1st) 162314, ¶ 35.  Although a court may consider the efficacy of a claim in deciding whether or not to allow an amendment to the pleadings, any doubt should be resolved in favor of an amendment.  *Bowe*, 240 Ill. App. 3d at 389.  Only when no set of facts entitling a plaintiff to relief

can be proved under the pleading may a reviewing court affirm a motion to dismiss. *Basler v. Webb*, 188 Ill. App. 3d 178, 179 (1989).

¶ 41     The supreme court has set forth four factors to be considered in determining whether the trial court abused its discretion in denying a plaintiff leave to amend: "(1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified." *Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992). To be entitled to an order granting leave to amend, a party must meet all four *Loyola* factors. *I.C.S. Illinois, Inc. v. Waste Management of Illinois, Inc.*, 403 Ill. App. 3d 211, 220 (2010).

¶ 42     We conclude that the trial court abused its discretion in dismissing plaintiff's complaint with prejudice. When the court asked plaintiff's counsel if he sought "an opportunity to plead again," counsel clearly responded, "Oh, absolutely." When asked if there were additional facts counsel wished to plead, counsel responded, "—at this point, I can't. There should be discovery." Contrary to defendant's assertion, counsel did not state to the court that he would not be able to plead any additional facts in support of the claim if given the opportunity to file an amended complaint. Rather, counsel sought discovery to further flesh out his complaint. The lack of any discovery precluded plaintiff from offering an amended complaint for the court to review. Given the lack of discovery and based on our review of plaintiff's complaint (from which we cannot say that no set of facts can establish a claim for willful and wanton conduct), we conclude that plaintiff should have been allowed to fully present her case. See *Smith v. Chemical Personnel Search, Inc.*, 215 Ill. App. 3d 1078, 1085 (1991) ("the most important consideration in determining whether an amendment should be allowed is whether it will be in furtherance of justice," and any "[d]oubts

should be resolved in favor of the allowance of the amendment."). Accordingly, the court's dismissal with prejudice was unreasonable, and we reverse and modify the dismissal to be without prejudice, and remand for further proceedings.

¶ 43                                III. CONCLUSION

¶ 44     For the reasons stated, the judgment of the circuit court of Winnebago County is affirmed in part and reversed in part and the cause is remanded for further proceedings.

¶ 45     Affirmed in part and reversed in part. Cause remanded.